Elmer Esther FIELDS, Appellant,

v.

The STATE of Missouri, Respondent.

No. KCD 26797.

Missouri Court of Appeals, Kansas City District.

March 4, 1974.

C. B. Fitzgerald, Warrensburg, for appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

PRITCHARD, Presiding Judge.

Upon an indictment charging appellant with the commission of the crime of "obtaining a check by trick and deception, or false and fraudulent representation, commonly called a confidence game," a jury found his guilt and he was sentenced to 7 years imprisonment in the Department of Corrections. In the present proceedings under Rule 27.26, V.A.M.R., he seeks to vacate the sentence and to have a new trial upon the single ground here presented that he was denied his constitutional right to be represented by counsel at his trial. Under the particular facts appearing and occur-

ring prior to the time the jury which tried the case was sworn, the requested relief must be granted. It must be noted that the judge who heard this motion was not the one who presided over appellant's trial.

The sequence of events is this: On June 25, 1971, appellant appeared in person, and the state appeared by the prosecuting attorney. Appellant complained about motions he had filed from the penitentiary, which apparently had not been received by either the court or the prosecuting attorney. The prosecuting attorney stated that if appellant had filed the motions properly and if he did not (sic) have an attorney the motions could be set up for argument. The court remarked, "Well, he hasn't asked me for an attorney, of course." Then after further colloquy, the court said, "Well, the case is set for next Monday but I wouldn't force you to trial on that date if you, unless you want to go to trial. If you don't have any money to hire a lawyer— THE DEFENDANT: I sure don't. THE COURT: —and can't borrow any money and if you want me to, I will appoint you a lawyer. THE DEFENDANT: Well, the way I can see it here now, the way the papers and stuff you've got, I don't think it's going to do a whole lot of good for me to have an appointed attorney and I definitely haven't the money to hire one from somewhere else. * * * So if there's any possible way, I'd like to just get this either dismissed or, or withdraw my motion, one of the two, because I don't have no money to hire no attorney and and I don't believe I'd want a court appointed attorney at this time, I don't believe. * * * THE COURT: Well, I'm not rushing you, and I've offered you an attorney but you say you don't want one. * * * MR. BRANDOM: Mr. Fields, the only thing I can say, the Court will give you plenty of time to get ready for trial, and if the Court appoints you an attorney— [Then follows appellant's statement that he could not get ready for trial 'locked up in the basement of a jail.'] THE COURT: That's the reason I offered to appoint you

an attorney, so let him get ready, the defense for you." Appellant then expressed dissatisfaction with "these appointed attorneys" with regard to their not showing up when called, and stated, "So you couldn't, I couldn't get nothing done in there, down there, no way, no way, no way, so it seems that this man wants to try me, so if he does he's going to do it without an attorney because I don't want any. THE COURT: All right. Then if you're ready on next Monday all right, and if you're not— THE DEFENDANT: Oh, I'm ready now, I'm ready right now."

Then on June 28, 1971, appellant appeared in person and he and the state announced ready for trial. The court advised appellant that in a long record the other day it offered to appoint him a lawyer, "but you told me you didn't want one so if you don't want a lawyer I can't and not going to attempt to force you to take one." Then followed a colloquy concerning appellant pleading "guilty to accomplice of the fact" but after the court read the indictment to him, appellant stated, "I ain't, not guilty of that, that there none whatsoever," and he told the court he was ready for trial. The court then entered a plea of not guilty, a jury panel was brought in, voir dire examination was conducted, and a recess was taken and outside the hearing of the jury panel there was further colloquy concerning a conference which was had between appellant and the assistant prosecutor, by which it appeared that appellant was confused as to the law on accessories, and during which the assistant prosecutor represented that he would prosecute appellant to the fullest extent and would seek the maximum penalty, and this exchange occurred: "MR. ALLEN: You understand you have a right to counsel. THE DEFENDANT: Yeah, I understand that. MR. ALLEN: Do you not want a lawyer? THE DEFENDANT: *Under these circumstances here, it looks like I'm going to have to have somebody besides me.* MR. ALLEN: Wasn't that what I suggested to you at the meeting earlier? THE DEFENDANT: Yeah, that's, that's right, but then after I agreed not to have none until you put it to these people in the words that you just done it didn't make no difference if I'd been in Alabama or Georgia when this thing was performed. Now this gentleman was here when you called Mr. Keith, I never before seen him in my life and I know he hasn't seen me, see, *so I think maybe I'd better have somebody.* THE COURT: I think maybe you're too late, sir. THE DEFENDANT: You think I'm too late? THE COURT: Because we've already gone this far,— THE DEFENDANT: Yes, sir. THE COURT: —and I offered to appoint you a lawyer several times, and I think you're too late." And after even further colloquy, appellant stated, "When I refused counsel it's because I figured I didn't need any because in my own mind I know I ain't done this thing, see."

Then the first jury was sworn, after which Juror McKee revealed that he knew one of the witnesses and banked at his bank, all of which might affect his judgment in the case. Juror McKee was excused, and it was learned that all but two persons on the panel had departed. Appellant stated that "ary" one of them was all right with him, he had no preference. Venireman Allen (who was a person peremptorily struck from the panel by appellant) was seated and the jury was sworn *again* to try the case. Trial proceeded, and appellant rather ineffectively cross-examined the prosecuting witness concerning his identification of appellant; he made an argument denying that he was the man who cashed the check in question; a verdict of guilt was returned; appellant then stated he wanted to file a motion for new trial, withdrew the request, then stated he wanted to appeal; and requested the appointment of counsel (which was not done) for that purpose.

The state admits that an accused in a criminal case is entitled to assistance

of counsel at all critical stages of the proceedings, but contends that appellant intelligently and knowingly waived that right. There would perhaps be merit in the state's contention of waiver of counsel if all there was in the record were the proceedings up to the time of completion of the voir dire examination which show that appellant was offered counsel, declined counsel, and stated he was ready for trial. There is some deficiency, however, in the explanation of the right of counsel in that appellant was not fully apprised of the benefit of counsel at trial and the perils of pro se defense. Cf. United States v. Warner, 428 F.2d 730, 734 (8th Cir. 1970); and Morris v. State, infra. But if there was an effective waiver of the right to counsel up to the time the voir dire examination of the jury was completed it was thereafter clearly withdrawn by appellant by his words, "Under these circumstances here, it looks like I'm going to have to have somebody besides me" and "so I think maybe I'd better have somebody." The jury had not been sworn and for that reason it was not too late to appoint counsel as the court stated to appellant. From a reading of the entire record it is apparent that appellant was confused as to the charge against him, and that he had no learning in the law. No defenses were asserted by him other than his denial that he was the person who, in conjunction with another, mulcted the prosecution witness. It was only after appellant conferred with the assistant prosecuting attorney, who, as the record shows, advised him that he was going to prosecute him to the fullest, that appellant became apprehensive and told the court that he was going to have to have someone besides himself. The absence of the fundamental federal constitutional right to assistance of counsel, as is the case here, shifts the burden of producing evidence of voluntary understanding *and continuous* waiver of the right to the state. The state has not here shouldered that burden. Compare Morris v. State, 456 S.W.2d 289, 292 (Mo.1970) and cases cited. The trial court's finding that appellant intentionally and voluntarily waived his right to court appointed counsel is clearly erroneous.

The judgment is reversed and the case is remanded for further proceedings.

All concur.