**STATE of Missouri, Respondent,**

v.

**Randal Lamar RICHARDSON, Appellant.**

**No. SD 29570.**

Missouri Court of Appeals, Southern District, Division One.

Feb. 22, 2010.

Margaret M. Johnston, Columbia, for Appellant.

Chris Koster, Atty. Gen. and James B. Farnsworth, Jefferson City, for Respondent.

ROBERT S. BARNEY, Judge.

Randal Lamar Richardson ("Appellant") appeals his convictions by the trial court for two counts of the class C felony of second degree domestic assault, violations of section 565.073;[1] one count of the class B felony of burglary in the first degree, a violation of section 569.160; one count of the class B felony of kidnapping, a violation of section 565.110, RSMo Cum.Supp. 2004; and one count of the class C felony of first degree tampering, a violation of

---

1. Unless otherwise stated, all statutory references are to RSMo 2000.

section 569.080.1(2), RSMo Cum.Supp. 2005. Following a jury trial, Appellant was sentenced by the trial court to varying concurrent terms of imprisonment in the Missouri Department of Corrections totaling ten years. In his sole point relied on, Appellant asserts the trial court erred in denying his request "to have counsel reappointed a few days before his scheduled jury trial after he had previously waived his right to appointed counsel."

Appellant does not challenge the sufficiency of the evidence to support his conviction; thus, a detailed recitation of the underlying facts in the present matter is unnecessary.[2]

At his arraignment on November 17, 2006, Appellant was represented by Cristy Meadows, an attorney with the Missouri State Public Defender ("MSPD"). His case was then transferred to Attorney Michael Lutke ("Attorney Lutke"), who was also with the MSPD, and Attorney Lutke entered his appearance on January 5, 2007. Appellant had some "difficulty getting along with ..." Attorney Lutke and had several complaints about how Attorney Lutke was preparing his defense. As a result, Appellant "fired" Attorney Lutke; the trial court allowed Attorney Lutke to withdraw from Appellant's case; and the trial court appointed the MSPD conflict office to represent Appellant. In September of 2007, Appellant was granted a continuance of a pretrial hearing.

Thereafter, Appellant was represented for several months by Attorney David Back of the MSPD's conflict office. On December 21, 2007, Attorney Lutke, again, entered his appearance on Appellant's behalf after the MSPD determined his problem with Attorney Lutke was not a true conflict of interest which would have necessitated appointment of conflict counsel; thus, the MSPD insisted Attorney Lutke remain as counsel for Appellant.

Following the re-appointment of Attorney Lutke, Appellant refused to cooperate with him or anyone associated with the MSPD. Appellant refused to meet with Attorney Lutke on numerous occasions, verbally berated him on a regular basis, filed for an order of protection against Attorney Lutke and sued Attorney Lutke in federal court. Accordingly, in February of 2008, the MSPD filed a motion to withdraw from Appellant's case and asserted that Appellant's repeated failure to cooperate with his appointed attorneys amounted to a forfeiture of his right to counsel. At the hearing on this motion, the trial court advised Appellant of "the substance of the [MSPD] motion" and "warned" Appellant "that if he continues to refuse to cooperate with his appointed counsel, and ... create[s] an irreconcilable difference with his appointed counsel, [he] may be found to have forfeited his right to appointed counsel." Appellant indicated to the trial court that he understood the need for his cooperation and the MSPD then assigned Charlton Chastain ("Attorney Chastain") to represent Appellant.

At a March 25, 2008, hearing, Attorney Chastain appeared with Appellant. However, Appellant repeatedly personally addressed the trial court. He also lodged complaints about the charges he was facing; argued certain of the charges should be dismissed; and filed several *pro se* motions. At an April 29, 2008, hearing, while Attorney Chastain was attempting to present arguments to the trial court, Appellant interrupted him and insisted on personally

---

**2.** The charges against Appellant stem from incidents which were directed at his then-wife and which took place on October 16, 2006, and July 27, 2006. Although the charges underlying Appellant's convictions occurred at different times, they were consolidated for trial in this matter.

addressing the trial court. Appellant then discoursed to the trial court at length about his perceptions of the case, his treatment by the MSPD, and his belief that the State was trying to "stack the deck" against him. On June 3, 2008, the trial court scheduled a hearing on Appellant's *pro se* motions for July 2, 2008. Then, on July 2, 2008, Appellant requested that the hearings on his *pro se* motions be continued so that he could subpoena additional witnesses. This request was granted by the trial court; however, on the date of the rescheduled hearing Appellant did not produce any witnesses, and Attorney Chastain aided him by offering argument in favor of Appellant's *pro se* motions. Appellant then attempted to offer into evidence a memo that had been prepared by an investigator for the MSPD. Attorney Chastain advised Appellant that such a document was work product, which could be prejudicial, and such documents should not be submitted for trial court consideration. Appellant ignored the advice offered by Attorney Chastain and stated:

> [m]y lawyer and I can disagree on this, but I'm requesting as the Defendant, because it's the client, not the attorney who does the time.... I'm the one who has to face the consequences, and I'm making a decision that I have a right to, that you look at these documents.

As such, the trial court reviewed the documents offered by Appellant; found they were irrelevant; and denied Appellant's *pro se* motions.

On August 14, 2008, Appellant filed his *pro se* "MOTION TO WAIVE COUNSEL VIOLATION OF (MISSOURI) (SUPREME) COURT RULE 4–8.4, (VIOLATION OF FIFTH) VIOLATION OF SIXTH AMENDMENT, VIOLATION OF FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION." In this motion, Appellant complained about Attorney Chastain's representation and the purported fact that Attorney Chastain "rejected as unnecessary" the motions he deemed important to his defense. He further alleged "there [were] continuous overtones of malice by design, perhaps, because of the recent flurry of civil complaints filed by [Appellant]," and he accused Attorney Chastain of lying as well as other dishonest acts. Appellant then requested he be allowed to represent himself.

On August, 20, 2008, three weeks before Appellant was scheduled to be tried in this matter, a hearing was held on his *pro se* motion requesting waiver of counsel. At the hearing, Appellant reiterated his complaints against the MSPD; his belief that their attorneys were dishonest and unknowledgeable; and his desire to represent himself. The trial court advised Appellant that typically "defendants do not succeed in representing themselves," and that the trial court would have to ascertain a number of things from Appellant in order to consider his motion. The trial court advised Appellant that if he waived his right to counsel he would "not have the benefit of someone trained in the law to give [him] advice on how to proceed" and his opposing counsel, the State, would "be represented by a person trained in the law;" it advised him "that there will be rules of evidence applied to [his] case and they will apply, whether or not [he understands] them;" it noted "the State will be obligated to prove [him] guilty beyond a reasonable doubt" and he would "be endeavoring then to convince a jury that there is reasonable doubt as to [his] guilt;" it informed him that he "would have the time and place in the trial to present evidence in [his] own defense" and he would "be entitled to present witnesses on [his] own behalf;" it advised him that it was his duty to secure his own witnesses, evidence, and subpoenas and that the State would have the opportunity to question any wit-

nesses called by him; it related that he had a right to testify on his own behalf, but he could not be compelled to do so and "the jury would be instructed that they are to draw no inference from [his] silence if [he chose] not to testify at trial;" it reminded Appellant that if he did testify at trial the State could also ask him "far-ranging" questions about his background including prior criminal convictions; it advised him that even *pro se* defendants are required to know and "follow the rules of conduct in the courtroom" including information about objections; and that it was "clearly advising [him] that it is against [his] best interest to proceed in this case representing [him]self." Appellant indicated he understood all of the foregoing information and, nevertheless, he desired to waive his right to counsel. The trial court gave Appellant an opportunity to read a written "Waiver of Counsel" form presented to him and thereafter Appellant signed the written waiver. The trial court then granted his *pro se* motion to waive counsel; reminded Appellant his case was set for trial on September 8, 2008, with a pretrial conference scheduled for September 4, 2008; advised him that if he received the maximum sentence on each count pending against him he would be incarcerated for seventy-six years; and relieved Attorney Chastain of his obligations.

During the September 4, 2008, pretrial conference Appellant filed a motion for a continuance of his trial. Appellant argued he needed a continuance for a month in order to contact witnesses, conduct more legal research, and otherwise prepare for trial. The State objected and argued their case had been prejudiced by myriad delays in that one of its witnesses had passed away and one had been deployed to Iraq. Acknowledging the fact that Appellant had only recently decided to waive counsel, the State asserted Appellant was well aware of the impending court date, knew it was his

burden to prepare himself for trial, and asserted he was simply attempting to delay the disposition of his case. Although noting Appellant's case had been continued "perhaps four and as many as six times in the past" at his request, the trial court found it was "unwilling to make a finding that [Appellant's] application for continuance [was] made solely for the purpose of delaying the trial" and granted Appellant's motion for a continuance. A new trial date was set for October 14, 2008.

Pretrial conferences were then held on September 22, 2008; September 23, 2008; and October 9, 2008. At the October 9, 2008, conference Appellant filed another motion for continuance. The trial court found Appellant's "case has been set for trial a long time" and was "continued prior at [his] request with the assurance that [he] would be ready for trial. . . ." Finding that his motion was "made solely for the purpose of delay of the trial," the trial court denied this motion. Appellant then filed a motion to have all the charges against him dismissed due to the "irreparable constitutional injuries" he suffered during the time his case was pending, and he threatened to file "complaints with the federal—the district office . . . with the ACLU, everybody . . ." asserting he had not gotten "a fair shake in these courts." The trial court denied his motion to dismiss. Appellant then complained about "interference" in preparing his defense such as his inability to easily subpoena and interview witnesses. He was then reminded by the trial court that he had been advised of such perils when he decided to represent himself and Appellant then announced: "I want to—I can't deal with this interference. I want my case to be appointed to the conflict office. I want the public defender's conflict office." When this request was denied by the trial court, he then continued to complain about the

"conditions" under which he was working to prepare his defense and he ultimately asked for counsel to be appointed to represent him.

The following day, which was a Friday with the trial set for the following Tuesday, the trial court continued its discussion with Appellant about his request to have counsel appointed "under [his] Sixth Amendment right...." Following argument from both sides, the trial court found that the fact that Appellant waited until "basically ... the eve of trial" to request counsel be reappointed convinced the trial court that his request was made solely for the purpose of delaying his prosecution. The trial court stated that:

at the pretrial conference yesterday [Appellant] requested a continuance of this trial setting. The Court denied that request for continuance and made the finding that that request for continuance, unlike his request for continuance previously, was made solely for the purpose of delaying the case, and that request for continuance remains denied. [Appellant] now requests counsel. This Court would find that [Appellant] has made a knowing, a voluntary and intelligent waiver of his right to counsel. That right to counsel no longer exists. It is not something that rests in [Appellant's] pocket and something he can pull out when he desires to use it. It is this Court's finding and opinion that [Appellant] is now playing the system.

* * *

That there are many cases by the Missouri Courts of Appeal and Supreme Court that would support the proposition that a single [d]efendant should not by strategy be allowed to or even seek to defeat the efforts of this Court to provide due process to either the [d]efendant himself or to all of the other many incarcerated persons that reside, in this case, the Greene County Jail, and this [Appellant] is not entitled to a continuance, and it is an effort by him to further thwart the system.

The effort now to seek counsel is furthering that effort. [Appellant] knows full well that if the Court were to appoint him counsel now that he would be then afforded counsel who would not be prepared for trial, because he himself has taken over the complete representation of himself. This Court further observes that nothing that has occurred in [Appellant's] difficulty in preparing his case for trial was something that was not specifically discussed with [Appellant] at the time of his waiver of counsel. These frustrations with subpoenas, the difficulty in preparing the case were things that were discussed both on the record and in writing with [Appellant].

* * *

The case has been set for trial many times, the case has been set for trial while you ... [have] been representing yourself. The Court did grant you a continuance previously, and made the finding at that time that you were not making that request solely for the purpose of delay. The Court can make no such finding at this time. The Court does think your efforts at this time are solely for the purpose of delay.

* * *

So at this point the Court does not appoint you counsel, you have effectively waived your right to counsel.

* * *

It is too late. This is the eve of trial, it is too late for me to provide you effective representation, and the case remains set for trial beginning 8:30 in the morning, October 14th, 2008.

A trial in this matter was held on October 14, 2008. At trial, Appellant conduct-

ed his voir dire, offered an opening statement, cross-examined a number of the State's witnesses, called several witnesses to testify on his behalf, participated in the jury instruction conference and gave a closing argument. At the close of all the evidence, the jury convicted Appellant of all five charged counts. Thereafter, during the punishment phase of the trial, the State presented evidence that Appellant had a prior conviction for raping a former fiancée and a prior conviction for the battery of his first wife. The jury made its recommendations and those recommendations were followed by the trial court which made the decision to run the sentences concurrently. This appeal followed.

In his sole point relied on, Appellant maintains the trial court abused its discretion in overruling his "request to have counsel reappointed a few days before his scheduled jury trial after he had previously waived his right to counsel...." He asserts such a ruling violated "his fundamental rights to counsel, a fair trial, and to due process ..." in that "the trial court's actions deprived Appellant of his right to counsel at a critical stage of the proceedings, and such deprivation requires automatic reversal of his judgment and sentence."

■ "The Sixth and Fourteenth Amendments of [the United States] Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." *Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). " 'Criminal defendants are guaranteed th[is] right to counsel, and absent a knowing and intelligent waiver of counsel, no defendant may be imprisoned unless represented by counsel at trial.' " *State v. Rawlins*, 248 S.W.3d 680, 683 (Mo.App.2008) (quoting *State v.*

*Kilburn*, 941 S.W.2d 737, 739 (Mo.App. 1997)). However, this right can be waived. "Section 600.051 provides that a written waiver of counsel must be made knowingly and intelligently." *Id.* Specifically, section 600.051.1 sets out that prior to waiving his right to the assistance of counsel a defendant must be presented with a written waiver of counsel "which the defendant has read or which has been read to the defendant before the signing thereof...." This written waiver must inform the defendant:

(1) That the defendant has been charged with the offense of _____ (nature of charge must be inserted before signing);

(2) That the defendant has a right to a trial on the charge and further that the defendant has a right to a trial by a jury;

(3) That the maximum possible sentence on the charge is _____ imprisonment in jail and a fine in the amount of _____ dollars or by both imprisonment and fine. That the minimum possible sentence is _____ imprisonment in jail or by a fine in the amount of _____ dollars or by both such confinement and fine;

(4) That the defendant is aware that any recommendations by a prosecuting attorney or other prosecuting official are not binding on the judge and that any such recommendations may or may not be accepted by judge;

(5) That if defendant pleads guilty or is found guilty of the charge, the judge is most likely to impose a sentence of confinement;

(6) That, if indigent, and unable to employ an attorney, the defendant has a right to request the judge to appoint counsel to assist the defendant in his defense against the charge.

§ 600.051.1. "The waiver must be signed before and witnessed by the judge or clerk of the court" and "[t]he requirements of

[s]ection 600.051 are strictly enforced."[3] *Rawlins*, 248 S.W.3d at 684.

While section 600.051 "allows a defendant to execute a written waiver of counsel, the court's duty to the defendant is not extinguished merely by the signing of the form." *City of St. Peters v. Hodak*, 125 S.W.3d 892, 894 (Mo.App.2004). "Rather, the court must advise the defendant of the perils of self-representation on the record 'before the trial date, to allow defendant time to choose whether to waive the right to an attorney.'" *Id.* (quoting *State v. Wilbur*, 976 S.W.2d 15, 15 (Mo. App.1998)). In such an instance, the trial court

> must make a penetrating and comprehensive examination in order to properly assess that the waiver was made knowingly and intelligently. The defendant should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'

*State v. Watson*, 687 S.W.2d 667, 669 (Mo. App.1985) (quoting *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525) (internal citation omitted).

In his brief, Appellant takes no issue with the trial court's finding that his original waiver of counsel was valid, or that his last minute request for an attorney was anything other than a delay tactic. Instead, as best we discern, he appears to argue that a trial court is categorically required to allow a criminal defendant to withdraw a previously entered, valid waiver of counsel at any time he so desires.

In support of his proposition, Appellant primarily argues this matter is akin to that found in *Fields v. State*, 507 S.W.2d 39 (Mo.App.1974), a postconviction relief action under former Rule 27.26.[4] In *Fields*, the defendant sought "to vacate [his] sentence and to have a new trial upon the single ground ... that he was denied his constitutional right to be represented by counsel at his trial." *Id.* at 40. Following his arrest for " 'obtaining a check by trick and deception, or false and fraudulent representation, commonly called a confidence game ...,'" the defendant filed several *pro se* motions with the trial court and appeared on his own behalf at a hearing on June 25, 1971. *Id.* The defendant "complained about motions he had filed from the penitentiary, which apparently had not been received by either the [trial] court or the prosecuting attorney." *Id.* The State responded that the motions were not properly filed and he did not have an attorney such that the motions had not been calendared for argument. *Id.* Noting that the defendant had not requested to be represented by counsel, the trial court discussed with the defendant whether he was indigent such that the trial court could appoint an attorney for him at no cost. *Fields*, 507 S.W.2d at 40. The defendant informed the

---

3. There is an exception to the requirement that a written waiver of counsel is required and there is case law to support the notion that "[a] defendant can impliedly waive counsel by his or her own conduct." *Rawlins*, 248 S.W.3d at 684. "Most of these 'implied by conduct' cases have arisen where a non-indigent defendant refuses to secure private counsel" and "an indigent defendant may also waive counsel by his or her own uncooperative behavior." *Id.* In such a situation, "the defendant must 'be admonished of the perils of self-representation' consistent with a writ-

ten waiver under [s]ection 600.051." *Id.* (quoting *State v. Kilburn*, 941 S.W.2d 737, 739 (Mo.App.1997)).

Here, while Appellant's conduct throughout this matter supported his original decision to validly waive counsel, Appellant also signed a written waiver of counsel.

4. Rule 27.26 was repealed "by order dated Feb. 11, 1987, eff. Jan 1, 1988." Missouri Court Rules (2008).

trial court that he did not have money to hire a private attorney and remarked that

> the way I can see it here now, the way the papers and stuff you've got, I don't think it's going to do a whole lot of good for me to have an appointed attorney and I definitely haven't the money to hire one from somewhere else.... So if there's any possible way, I'd like to just get this either dismissed or, or withdraw my motion, one of the two, because I don't have no money to hire no attorney and ... I don't believe I'd want a court appointed attorney at this time, I don't believe.

*Id.* The defendant then reiterated to the trial court his distrust of appointed attorneys and asserted his desire to proceed to trial without appointed counsel "because [he did not] want any." *Id.* at 41. Although the defendant insisted he was ready to go to trial "right now," the trial court set the trial for June 28, 1971. *Id.*

Immediately prior to trial, the trial court again confirmed that the defendant did not desire appointed counsel; reiterated the discussion they previously had on the matter; read the indictment to the defendant; and the defendant entered his plea of not guilty. *Id.* at 41. The matter proceeded to trial, "a jury panel was brought, [a] voir dire examination was conducted, and a recess was taken ... outside the hearing of the jury panel" due to some questions the defendant had as to "the law on accessories...." *Fields,* 507 S.W.2d at 41. During this discussion, the State asked the defendant if he desired counsel and he stated that "[u]nder these circumstances here, it looks like I'm going to have to have somebody besides me." *Id.* (emphasis omitted). The trial court related that it had " 'offered to appoint [him] a lawyer several times, and [he was] too late' " in making his request for counsel. *Id.* The matter proceeded to trial with the defen-

dant representing himself, he was convicted of the crime charged, and sentenced to seven years imprisonment. *Id.* at 41–42.

In rendering its decision, the appellate court opined that

> [t]here would perhaps be merit in the [S]tate's contention of waiver of counsel if all there was in the record were the proceedings up to the time of completion of the voir dire examination which show that [the defendant] was offered counsel, declined counsel, and stated he was ready for trial. There is some deficiency, however, in the explanation of the right of counsel in that [the defendant] *was not fully apprised of the benefit of counsel at trial and the perils of pro se defense.* But if there was an effective waiver of the right to counsel up to the time the voir dire examination of the jury was completed it was thereafter clearly withdrawn by [the defendant] by his words, 'Under these circumstances here, it looks like I'm going to have to have somebody besides me' and 'so I think maybe I'd better have somebody.' The jury had not been sworn and for that reason it was not too late to appoint counsel as the court stated to [the defendant]. From a reading of the entire record it is apparent that [the defendant] was confused as to the charge against him, and that he had no learning in the law. No defenses were asserted by him other than his denial that he was the person who, in conjunction with another, mulcted the prosecution witness. It was only after [the defendant] conferred with the [State], who, as the record shows, advised him that [it] was going to prosecute him to the fullest, that [the defendant] became apprehensive and told the court that he was going to have to have someone besides himself. The absence of the fundamental federal constitutional right to assistance of

counsel, as is the case here, shifts the burden of producing evidence of voluntary understanding and continuous waiver of the right to the [S]tate. The [S]tate has not here shouldered that burden. The trial court's finding that [the defendant] intentionally and voluntarily waived his right to court appointed counsel is clearly erroneous.

*Id.* at 41–42 (internal citations omitted) (emphasis added). As such, the reviewing court reversed and remanded the matter to the trial court. *Fields,* 507 S.W.2d at 42.

The present matter differs from *Fields* in a number of ways. First, *Fields* was decided prior to the enactment of section 600.051 and, unlike the instant case, there was no written waiver form read and signed by the defendant. Second, there was little probative evidence in *Fields* showing that the defendant was requesting the appointment of counsel in order to delay his prosecution, while in Appellant's case there is ample evidence showing that Appellant had been attempting to delay his trial for well over a year. Third, in *Fields* the trial court did not extensively recite all of the rights and obligations of a *pro se* defendant; there were no verbal warnings to the defendant of the perils of representing himself; and there was no colloquy between the trial court and the defendant showing he understood what he was getting himself into by representing himself. However, in the present case, in addition to reading and signing the section 600.051 form, as previously set out, Appellant was fully and completely advised by the trial court at length in open court of the issues associated with self representation. Fourth, while the defendant in *Fields* rushed to trial a mere three days after choosing to represent himself only to discover that he was in over his head, Appellant had been representing himself on and off throughout these proceedings and had

already had two months in which to prepare for trial. Here, having been extensively warned about proceeding *pro se,* Appellant, who had completed three years of college, did not request to have counsel appointed until after his last request for a continuance was denied. *Fields* certainly does not stand for the proposition that a trial court must immediately and totally acquiesce to a criminal defendant's request for counsel merely to delay his prosecution, particularly, after his right to counsel was validly waived in writing and in open court.

While we agree with the State that there are no Missouri cases exactly on point with the present factual situation, we are guided by the State's references to cases which found that it is within the trial court's discretion to deny motions filed by a defendant which are calculated to delay trial, as well as to deny a defendant's assertions that his constitutional rights were violated when such assertions are made simply to hinder his prosecution. For example, in *State v. Parker,* 890 S.W.2d 312, 316 (Mo. App.1994), the reverse scenario occurred, in that the defendant filed a motion to proceed *pro se* a mere day prior to trial and requested a continuance so that he could prepare his defense. The trial court refused this request and ordered the defendant to proceed to trial with counsel. *Id.* On appeal, this Court found the defendant's

> motion and his oral presentation of it to the trial [court] reveals that if his motion had been allowed, either a continuance would have been necessary, which is not the intended use of the right of self-representation, or the trial would have gone on as scheduled which would not have been fair to the parties involved, especially to [the defendant] who admitted that he was unprepared.

*Id.* at 316 (internal citation omitted). Accordingly, the reviewing court found that "[i]n such a case, the motion ... is addressed to the sound discretion of the trial court," and "[u]nder the circumstances, the trial court did not abuse its discretion when it denied [the defendant's] request ... on the Friday preceding the Monday the trial was to start." *Id.* at 316–17.

Likewise, in *State v. Morton,* 648 S.W.2d 642–43 (Mo.App.1983), the trial court found that where the defendant waived his right to a jury trial, the matter was scheduled for a bench trial, and then several weeks before trial he decided to withdraw his jury trial waiver, the defendant was not entitled to withdraw his waiver. On appeal this Court noted that "it appears to be the consensus of courts elsewhere that an accused does not have a constitutional right to withdraw a valid jury trial waiver, and that whether that waiver may be withdrawn is discretionary with the trial court." *Id.* at 643 (internal citation omitted). In discussing the facts in *Morton,* this Court found that "[r]emoving a case from a jury trial, rescheduling it, and then rescheduling it back for jury trial would obviously disrupt the trial court's scheduling of other matters and disrupt not only this trial, but others" such that the "trial court should not be required to call a special jury because [the] defendant changed his mind." *Id.* at 644. Accordingly, no trial court error was found. *Id.*

Here, per section 600.051, Appellant read and signed a written waiver form which advised him of the issues he might face in choosing to represent himself. Further, the trial court orally discussed the perils of self representation with Appellant at length in open court and the State even advised Appellant to seek representation. Additionally, the record in this matter is replete with testimony from Appellant about his disdain for and distrust of the MSPD; his civil lawsuits filed against them; his lack of cooperation with the various attorneys that have represented him; his repeated *pro se* requests for continuances of this matter; and his repeated assertions that he desired to represent himself. At the pretrial hearing in this matter, a mere four days prior to trial, Appellant requested another continuance to continue to prepare his defense, although Appellant had been representing himself at times throughout this matter and he had over two months to prepare his defense since the time his request to proceed *pro se* was granted. It was only when this request for a continuance was denied that he requested the appointment of counsel. We agree with the trial court that Appellant's right to counsel "is not something that rests in [Appellant's] pocket and something he can pull out when he desires to use it." Appellant waived his right to counsel not only through his written and spoken requests to do so, but also through his repeated attempts to delay the trial in this matter. The trial court did not abuse its discretion in denying his request to have counsel again appointed for him. Point denied.

The judgment and sentence of the trial court is affirmed.

BATES, P.J., and BURRELL, J., concur.