In the Missouri Court of Appeals
 Eastern District
 DIVISION TWO

STATE OF MISSOURI, ) ED108571
 )
 Respondent, ) Appeal from the Circuit Court
 ) of St. Louis County
v. ) 18SL-CR02937-01
 )
CRUZ HOWELL, ) Honorable Joseph L. Walsh, III
 )
 Appellant. ) FILED: June 8, 2021

 Introduction

 Cruz Howell (“Howell”) appeals the sentences and convictions for three counts of

second-degree domestic assault entered after a jury verdict. He argues the trial court plainly

erred in denying his request for counsel and in denying his motions to dismiss his case for

speedy-trial violations. We affirm.

 Background

 The State charged Howell as a prior and persistent offender with one count of the class D

felony of domestic assault in the second degree for knowingly causing physical injury to K.L. on

April 13, 2018, by striking her in the face with his fist. K.L. and Howell were family members,

in that they lived together and had a child together. As a result of Howell’s attack, she had

visible injuries to her face. At K.L.’s request, Howell was released on bond to house arrest, and

the bond court permitted him to leave the house five days a week to work so that he could afford
a lawyer. Howell was ordered to have no contact with K.L. On July 18, 2018, Howell was

arrested and again charged with two counts of the class D felony of domestic assault in the

second degree, and his bond was revoked. The State asserted Howell knowingly caused serious

physical injury to K.L. by beating her with a metal stool and an aluminum bat, after which K.L.

was treated for a broken wrist and multiple contusions. The two cases were consolidated for

trial.

 Howell filed his first pro se motion asserting his right to a speedy trial in November

2018. While his case was pending, he filed multiple pro se motions reasserting his speedy-trial

rights and multiple pro se motions to dismiss for violations of this right. The trial court denied

Howell’s motions to dismiss for speedy-trial violations, finding Howell failed to prove he

suffered prejudice from the delay or was deprived of the ability to adequately defend himself

against the charges.

 Regarding Howell’s history of legal representation in this case, a public defender initially

entered an appearance on Howell’s behalf in April 2018. At a hearing in June 2018, Howell

informed the court he did not want the public defender to represent him but wanted to hire his

own attorney. On July 10, 2018, Frederick Hawk (“Hawk”) entered his appearance on Howell’s

behalf, but at the hearing on February 25, 2019, Hawk requested to withdraw as Howell’s

counsel because Howell was not following Hawk’s advice and refused to listen to Hawk’s

counsel on what the law was. The trial court granted Hawk leave to withdraw as counsel over

Howell’s objection. At the same hearing, Howell initially made an oral request to represent

himself rather than have a public defender appointed, but, after the trial court strongly

encouraged that he have counsel, he requested he be allowed to seek private counsel. The trial

 2
court lifted Howell’s jail telephone restrictions1 only to allow him to contact attorneys, and the

court set a pretrial hearing for April 15, 2019, to hear all outstanding motions and to choose a

trial date.

 At the April 15 hearing, Howell submitted signed requests to waive his right to counsel.

The trial court strongly and repeatedly warned Howell of the perils of proceeding with self-

representation but granted the requests after engaging Howell in an extensive colloquy on the

rights he was waiving and the legal procedures he would have to follow. Notably, the trial court

specifically inquired if Howell understood how to select a jury by asking proper questions, the

legal grounds on which to object to jurors, and how to make peremptory challenges, to which

Howell responded he did. The trial court inquired if Howell wanted the court to appoint an

attorney to sit with him and give him advice during trial, which Howell declined. The court then

set trial for the first available date of September 9, 2019. On the morning of trial, Howell again

affirmed his intent to represent himself but also requested standby counsel from the public

defender’s office, to which the State responded that it was their understanding the public

defender’s office has a policy that it will not second chair trials.

 After voir dire, however, Howell requested an attorney, stating he did not know what he

was doing because he was not an attorney. The trial court responded: “You have been given

numerous opportunities. In fact you had a lawyer. I begged you to reconsider time and time

again, so now we’re here and I see this only as a delaying tactic.” Howell clarified he did not

want to stop the trial; he just wanted counsel to assist him. The trial court stated it would contact

the public defender’s office on Howell’s behalf to see if it would send an attorney but also

declared it would not continue the trial at this point because trial had already started, Howell had

1
 Howell’s jail telephone privileges had been restricted after a judge found he had been contacting K.L. in violation
of the prior court order.

 3
insisted on representing himself despite repeated warnings not to do so, and Howell had

consistently refused to apply for a public defender. During the lunch break, the trial court

contacted the public defender’s office but they declined to sit with Howell during trial. The trial

court refused to continue the case. Howell then requested, and the trial court granted, the

opportunity to talk with relatives to try to obtain private counsel for him. Howell was unable to

obtain private counsel and he represented himself pro se. After a trial, the jury convicted Howell

on all charges. Howell does not challenge on appeal the sufficiency of the evidence supporting

his convictions. The trial court sentenced Howell as a prior and persistent offender to concurrent

sentences of ten years on each count in the Missouri Department of Corrections. This appeal

follows.

 Discussion2

 Point I

 In his first point on appeal, Howell argues the trial court plainly erred in denying his

unequivocal request for an attorney and failing to appoint him counsel at trial, in violation of his

right to counsel under the Sixth and Fourteenth Amendments of the United States Constitution

and Missouri Constitution, resulting in structural error. We disagree.

 Howell concedes this issue was not preserved for appellate review. During the trial, at

which Howell appeared pro se, he did not object to the trial court’s failure to appoint him

2
 Howell notes that his brief uses the phrase “(cleaned up)” after legal citations to indicate that “internal quotation
marks, brackets, ellipses, footnote signals, alterations, citations, and other non-substantive prior alterations have been
omitted from the quotation.” We recognize the authority Howell cites of other state and federal courts that have
adopted the use of “(cleaned up)” citations when writing their opinions. However, we observe that courts and
advocates have different purposes in using citations, which makes this stylistic choice not universally appropriate.
Courts write not to persuade but rather to demonstrate their decisions are “grounded in precedent.” State v. Irwin, 592
S.W.3d 96, 105 n.4 (Mo. App. E.D. 2019). By contrast, we urge advocates, for whom credibility and accuracy are
essential in order to carry their burden of persuasion, to avoid the use of “(cleaned up).” See id. Courts frequently
need to know the precise language being used in a case or statute and are experienced at comprehending non-cleaned
up legal language. The use of the phrase “(cleaned up)” creates a solution for a problem that does not exist and, in
doing so, can have the unintended effect of damaging the persuasiveness of the advocate’s position.

 4
counsel. While the trial court appointed counsel during sentencing and counsel filed a motion

for a new trial that included this claim, the motion was untimely filed. Nevertheless, Howell

requests plain-error review under Supreme Court Rule 30.20.3 Plain error occurs where the

record facially establishes substantial grounds to believe plain error occurred, which is error that

is evident, obvious, and clear, resulting in manifest injustice or a miscarriage of justice. State v.

McCleary, 423 S.W.3d 888, 896 (Mo. App. E.D. 2014).

 “The Sixth and Fourteenth Amendments of the [United States] Constitution guarantee

that a person brought to trial in any state or federal court must be afforded the right to the

assistance of counsel before he can be validly convicted and punished by imprisonment.”

Faretta v. California, 422 U.S. 806, 807 (1975). Included in the Sixth Amendment right to

counsel is a defendant’s opposite right to waive counsel and to make his or her own defense. See

id. at 819; see also Section 600.051.1 (setting forth required findings for written waiver of

counsel).4 Once a defendant enters a knowing and voluntary waiver of counsel, the trial court “is

not categorically required to allow a criminal defendant to withdraw the previously entered, valid

waiver of counsel at any time he so desires.” State v. Leonard, 490 S.W.3d 730, 742 (Mo. App.

W.D. 2016); State v. Richardson, 304 S.W.3d 280, 289 (Mo. App. S.D. 2010); see also State v.

Garth, 352 S.W.3d 644, 655-56 (Mo. App. E.D. 2011). A defendant is not allowed to use the

right to self-representation to avoid or delay the trial. Richardson, 304 S.W.3d at 289. Whether

to allow a defendant to rescind a previously entered waiver of the right to counsel is at the

discretion of the trial court. See id.

 Here, Howell concedes his waiver of the right to counsel was valid, but he argues that,

because there was no evidence that his subsequent request for reappointment of counsel was an

3
 Any further rule references are to the Missouri Rules of Criminal Procedure (2021).
4
 All statutory references are to RSMo. (cum. supp. 2017), unless otherwise indicated.

 5
attempt to delay the trial, the trial court did not have the discretion to deny his request. He

contends the holdings in Richardson and Leonard require that before a trial court may deny the

request for reappointment of counsel there must be some objective evidence the defendant was

superficially or disingenuously invoking his right to counsel as a tactic to delay trial. See id. at

289-90 (no abuse of discretion in trial court’s denial of Richardson’s last-minute request to

rescind his prior waiver of counsel in part because there was ample probative evidence

Richardson had been attempting to delay trial for over a year); see also Leonard, 490 S.W.3d at

742-43 (no abuse of discretion in trial court’s denial of defendant’s last-minute request to rescind

waiver of counsel after court determined request was simply for purpose of delay). Specifically,

Howell points to language in the Richardson decision noting the trial court has discretion to deny

motions filed by defendant that are “calculated to delay trial, as well as to deny a defendant’s

assertions that his constitutional rights were violated when such assertions are made simply to

hinder his prosecution.” He argues this language from Richardson means that when there is no

probative evidence the defendant’s motion to rescind an earlier waiver of counsel was calculated

to delay trial, then the trial court has no discretion to deny the motion. Howell then argues that

because there was no evidence here that his request for counsel was intended to delay trial,5 the

trial court was not authorized under Missouri caselaw to deny his request for reappointment of

counsel.

 Contrary to Howell’s argument, this Court has previously found that a trial court does not

abuse its discretion when it denies a defendant’s last-minute request to rescind his valid waiver

5
 We note the trial court here characterized Howell’s request to have appointed counsel after the start of trial as “only
as a delaying tactic,” in light of his consistent refusal to accept a public defender and his repeated insistence on
representing himself despite warnings from the court on the perils of proceeding pro se. Howell argues on appeal the
evidence does not support the trial court’s conclusion, pointing to his request that trial not be continued but proceed
that day as scheduled with appointed counsel to help him. We do not address Howell’s challenge to the trial court’s
finding, in light of our overall conclusion that the trial court’s discretion to deny a last-minute motion to rescind a
valid waiver of counsel is not dependent on a finding that the defendant’s request was a strategy for delay.

 6
of counsel, even without a finding that the defendant has disingenuously invoked this right to

counsel with the purpose of delaying trial. See Garth, 352 S.W.3d at 655-56. In Garth, this

Court found that the trial court did not abuse its discretion in denying the defendant’s request to

withdraw his valid waiver of counsel and refusing to appoint counsel for the defendant after the

trial had begun, noting the defendant had been given many opportunities and encouragement to

accept appointed representation. Id. This Court noted that granting the defendant’s motion

would have necessitated a continuance after trial had already started, but there were no facts in

the record that the defendant had a history of requesting continuances or attempting to delay trial.

Id. Applying Garth, we explicitly find there is no requirement that the defendant must

demonstrate a history of delaying tactics before a trial court may deny a last-minute motion to

rescind a valid waiver of counsel. Rather, the pertinent issue is whether appointing counsel will

require a last-minute continuance, regardless of the defendant’s actions in initiating the

continuance.

 Accordingly, we find the trial court here did not err in denying Howell’s request to

rescind his waiver of counsel. See id. Similar to Garth, although Howell stated he wanted the

trial to proceed, his request inherently required a continuance. No attorney could ethically under

the Rules of Professional Conduct represent a client in a felony trial that same day without even

passing awareness of the basic facts or possible defenses, and a continuance would be an

absolute requirement for any attorney to agree to enter the case. See Mo. R. Prof’l Conduct 4-1.1

(“[a] lawyer shall provide competent representation to a client. Competent representation

requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the

representation”) (emphasis added). To allow otherwise would invite a subsequent motion for

ineffective assistance of counsel. Thus, by allowing Howell to rescind his waiver of counsel, the

 7
trial court would in fact be forced to grant a continuance, regardless of Howell’s stated desire to

proceed that day with trial and his multiple speedy-trial motions.

 As for Howell’s claim of structural error, the complete denial of counsel can constitute

structural error. See Neder v. U.S., 527 U.S. 1, 8 (1999) (citing Gideon v. Wainwright, 372 U.S.

355 (1963)). However, because a defendant has the right to self-representation, granting that

right does not “necessarily render the trial fundamentally unfair,” which is a prerequisite for

finding structural error. Neder, 527 U.S. at 8-9. Here, Howell insisted on his constitutional right

to self-representation until the day of trial. A trial court is not required to allow the defendant to

change their mind about self-representation and to appoint counsel at a defendant’s request after

the trial has already begun or on the day of trial. See Garth, 352 S.W.3d at 655-56. The trial

court did not plainly err in denying Howell’s request the day of trial to rescind his waiver of

counsel and have counsel appointed.

 Point I is denied.

 Point II

 In his second point on appeal, Howell argues the trial court plainly erred in entering

 sentence and judgment against him for three counts of domestic assault because his convictions

 violated his right to a speedy trial under the Sixth and Fourteenth Amendments of the United

 States Constitution and Missouri Constitution, in that the reasons for the delay weighed against

 the State and the record showed Howell’s pretrial incarceration inhibited his defense, resulting

 in manifest injustice. We disagree.

 Howell again concedes this claim is not preserved for appellate review but requests plain

 error review under Rule 30.02. The right to a speedy trial is imbedded in both the United States

 and Missouri Constitutions. U.S. Const. amend. VI; Mo. Const., art. I, 18(a). “Orderly

 8
expedition of a case, not mere speed, is the essential requirement behind a speedy trial.” State v.

Wright, 551 S.W.3d 608, 618 (Mo. App. E.D. 2018). There is no bright-line rule for

establishing when there has been a speedy-trial violation. Id. Rather, in determining whether a

violation of the right to a speedy trial has occurred, courts must balance four factors: (1) the

length of the delay; (2) the reason for the delay; (3) the defendant’s assertion of his right; and

(4) the prejudice to the defendant resulting from the delay. State v. Sisco, 458 S.W.3d 304, 313

(Mo. banc 2015).

 First, the length of the delay triggers the analysis: until there is a delay that is

presumptively prejudicial, there is no need to inquire into the other factors. Id. In Missouri, a

delay of more than eight months is generally considered presumptively prejudicial. Id.

The delay in bringing a defendant to trial is measured from the time of the formal indictment or

when actual restraints are imposed by an arrest. State v. McKay, 411 S.W.3d 295, 303 (Mo.

App. E.D. 2013). However, “any delay attributable to the defendant’s continuances, motions, or

other actions must first be subtracted from the total delay.” State v. Allen, 954 S.W.2d 414, 417

(Mo. App. E.D. 1997).

 Here, Howell had two domestic assault cases pending that were consolidated for trial and

are at issue on appeal. He was arrested and charged with the first offense on April 13, 2018, and

released on bond on June 19, 2018. He was then charged and arrested with the second offense

on July 19, 2018, and he remained in custody until his trial began on September 9, 2019. Not

counting the month that Howell was released on bond, the delay between his initial arrest and his

trial was approximately sixteen months. Of that time, some delay can be attributed to Howell

and subtracted from the total delay. Howell’s attorney requested a continuance on November 27,

2018, until January 14, 2019, and again until February 25, 2019. At the February 25, 2019,

 9
hearing when Howell’s attorney withdrew, the trial court granted a continuance until April 15 for

Howell to secure new private counsel.6 Although Howell argues he did not want his attorney to

file requests for continuances, he is bound by his attorney’s actions. State ex rel. McKee v. Riley,

240 S.W.3d 720, 726 (Mo. banc 2007). Regardless, even subtracting these periods from the

total, there was a delay of more than eight months between Howell’s arrest and his trial, which is

considered presumptively prejudicial and triggers the next steps in the analysis. See Sisco, 458

S.W.3d at 313.

 Second, once a presumptively prejudicial delay is established, courts then consider the

 reasons for the delay. Missouri follows guidance from the United States Supreme Court, which

 states:

 A deliberate attempt to delay the trial in order to hamper the defense should be
 weighted heavily against the government. A more neutral reason such as
 negligence or overcrowded courts should be weighted less heavily but
 nevertheless should be considered since the ultimate responsibility for such
 circumstance must rest with the government rather than with the defendant.
 Finally, a valid reason, such as a missing witness, should serve to justify
 appropriate delay.

Barker v. Wingo, 407 U.S. 514, 531 (1972); Sisco, 458 S.W.3d at 313-14. Here, it appears from

the record that the State did not engage in deliberate attempts to delay the trial to hamper the

defense; rather, the delay was attributable to slow discovery and negotiations between the parties

and to scheduling difficulties. For example, at the April 15 hearing, the trial court set the trial on

its first available trial date, which was five months later on September 9, 2019. We note that the

trial court attempted to mitigate this delay by bumping several other cases to grant Howell the

6
 At this hearing, while Howell at times requested to represent himself pro se and to proceed to trial without delay,
he also requested to be allowed to seek private counsel and agreed to have his motions heard at a pre-trial hearing
scheduled for April 15, 2019.

 10
number one setting. Thus, the record demonstrates the reasons for the delay were negligence and

overcrowded dockets, which weighs against the State but not heavily.

 Third, Howell here asserted his right to a speedy trial early in the proceeding and

continued to reassert it throughout the pendency of the case. This factor weighs in Howell’s

favor. See State v. Bolden, 558 S.W.3d 513, 522 (Mo. App. E.D. 2016).

 Fourth, whether the delay resulted in prejudice to the defendant is the most important

factor. Id. We evaluate whether the delay caused a defendant actual prejudice in light of three

concerns: (1) the oppressiveness of pretrial incarceration, (2) whether the delay unduly

heightened the defendant’s anxiety, and (3) the impairment of the defendant’s defense. Id. at

522-23. The final concern is the most serious. See State v. Young, 582 S.W.3d 84, 95 (Mo. App.

E.D. 2019). The defendant bears the burden of proving prejudice. Id. Any prejudice from the

delay must be actual and apparent, or at least inferable, from the record, rather than merely

speculative. Id.

 Here, Howell asserts that his pretrial incarceration weighed heavily on him and

heightened his anxiety, resulting in prejudice, because his grandfather died while he was in jail

and, although the trial court granted an escorted furlough to attend the funeral, jail staff denied

the furlough under the mistaken belief the funeral was out of state. “[A]nxiety and concern exist

in every criminal case” and these alone do not establish prejudice where the record does not

show with specificity that the delay weighed “particularly heavily.” Sisco, 458 S.W.3d at 317

(citation omitted). Here, the record included evidentiary support for Howell’s assertions that he

was anxious and unhappy to be separated from his family and support system at a difficult time,

in that he filed pro se motions with the trial court during the pendency of his pretrial

incarceration stating so. Nevertheless, we find that Howell’s anxiety and the oppressiveness of

 11
his pretrial incarceration were not particularly heavy or more than the usual anxiety and concern

felt by all incarcerated persons separated from their families, and therefore the delay did not rise

to the level of prejudice. See id.

 Likewise, as to the third concern, the record does not show Howell’s defense was

significantly impaired by the delay. Howell argues his pro se defense was impaired by being

incarcerated. While this argument was undoubtedly accurate, the trial court warned Howell

before accepting his waiver of counsel that he would be disadvantaged by conducting his defense

while incarcerated, but Howell knowingly and voluntarily chose to represent himself pro se

against the court’s strong admonitions. He cannot now allege prejudice from not having proper

resources in jail to represent himself when he knew this danger before proceeding with self-

representation. See Miller v. State, 559 S.W.3d 15, 22 (Mo. banc 2018) (it is “axiomatic that a

defendant may not take advantage of self-invited error or error of his own making”). Moreover,

the disadvantages of jail legal resources and his limited telephone access did not stem from the

delay but from Howell’s decision to proceed pro se. Even if he had he proceeded to trial within

eight months of his initial indictment and incarceration, he would have had the same access to

legal resources and the same telephone limitations he now asserts have prejudiced him. Under

these facts, Howell cannot meet his burden to prove his defense suffered actual prejudiced from

the delay specifically. See Young, 582 S.W.3d at 95. Accordingly, the trial court did not plainly

err in denying his various motions to dismiss for speedy-trial violations and in entering sentences

and judgment against him.

 Point II is denied.

 Conclusion

 The judgment and sentences of the trial court are affirmed.

 12
 Robin Ransom, Presiding Judge

Sherri B. Sullivan, J.,
and Lisa P. Page, J., concur.

 13