STATE Of Missouri,
Plaintiff/Respondent,

v.

Paul C. GARTH, Defendant/Appellant.

No. ED 96138.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 15, 2011.

Kent Denzel, Columbia, MO, for Defendant/Appellant.

Timothy A. Blackwell, Jefferson City, MO, for Plaintiff/Respondent.

## SHERRI B. SULLIVAN, Judge.

### Introduction

Paul C. Garth (Appellant) appeals from the trial court's judgment entered upon a jury verdict finding Appellant guilty of first-degree domestic assault in violation of Section 565.072.[1] We affirm.

### Factual and Procedural Background

The State charged Appellant by indictment with first-degree domestic assault, for events transpiring on December 18, 2009. Viewed in the light most favorable to the verdict, the following evidence was presented at trial.

### Assault

In December 2009, Appellant was living with Victim as her boyfriend. Victim broke off their relationship after Appellant wrote "I love u" on a bullet and gave it to Victim. On December 17, 2009, Appellant sent Victim a text message stating, "We over i will get my boxes and leave your keys." Appellant went to Victim's house that evening and they argued into the night. At approximately 2:00 a.m. the next morning, December 18, 2009, Appellant went to the basement and retrieved a can of gasoline. Appellant poured the gasoline on Victim, stating that if he couldn't have her, no one would. Victim tried to run away, but Appellant struck a lighter and set her on fire.

Victim rolled on the floor to put out the fire. Appellant got a bathroom rug to help put out the fire and said he was sorry and he didn't think it would light. However, Appellant did not call for assistance and did not render any first aid. Victim begged Appellant to take her to the hospital. Appellant refused because he was afraid of going to jail. Victim finally persuaded Appellant to take her to the hospital by promising that she would tell the hospital personnel that she injured herself and that Appellant did not do it. Appellant took Victim to the hospital, where Victim stated that she tried to kill herself by pouring gasoline on herself and lighting it because her grandmother had just died. Victim then went into shock and lost consciousness. Victim suffered burns to her hands, arms, back, torso, neck, and face, and received skin grafts on her hand.

The next day, December 19, 2009, Appellant called Victim's ex-mother-in-law, E.E., and told her that they had been messing with a gas can on the stove and Victim lit a cigarette and "blew herself up."[2] Victim's son, C.E., heard about it and called Appellant, asking him what had happened. Appellant told him that Victim poured kerosene on herself and lit herself on fire. C.E. asked Appellant why he did not call 911 or notify family members, to which Appellant responded that he had been trying to extinguish the fire and had burnt his hands. Victim's brother, W.J.,

---

1. All statutory references are to RSMo 2006, unless otherwise indicated.

2. Victim has an electric stove.

visited Victim at the hospital and was informed by hospital personnel that Victim had said that she had done this to herself. W.J. did not believe that Victim would do this to herself. Victim had tubes down her throat and was unable to speak, but W.J. asked her to blink her eyes twice if somebody had done this to her and she blinked twice. W.J. then asked her to blink once if Appellant had done this to her and she blinked once. Hospital personnel called the police.

At Victim's house, Officer Patrick Hill (Officer Hill) observed a large burn mark on the dining room carpet, burn marks on the bathroom cabinet and floor, burnt clothing in the kitchen trash can, a burned bathroom rug at the bottom of the basement steps, and a gasoline can in the basement.

On December 22, 2009, after the tubes were removed from Victim's throat, she told Officer Hill that Appellant had tried to kill her by setting her on fire. Victim then went into cardiac arrest but survived. On January 5, 2010, Victim was discharged from the hospital, but was still being treated regularly for her injuries at the time of trial in November, 2010.

### Pre–Trial

### Waiver of Counsel Hearings

On May 11, 2010, Appellant filed a motion for change of appointed counsel. On July 1, 2010, Appellant filed a motion to represent himself as a *pro se* litigant, stating that he wished to represent himself, and asking for standby counsel. On August 10, 2010, the trial court held a hearing on the matter.

Appellant told the court that he wished to discharge the public defender and represent himself because he did not feel that the public defender was representing him fairly, and she had not "stood by" the requests and motions that he had filed. The trial court asked Appellant what he wanted it to do, and Appellant stated that he wanted to be allowed to represent himself with standby counsel. The trial court advised Appellant that he was facing "very serious charges," that "Domestic assault First Degree is an A felony," and "[t]he minimum is ten years up to life imprisonment." The trial court asked Appellant if he understood that. Appellant stated that he did. The trial court then advised Appellant that representing himself would be a serious mistake, and asked if he understood that. Appellant said that he did.

The trial court then went through the provisions of the waiver form with Appellant. Appellant signed a waiver form stating that he was charged as a persistent offender with the class A felony of domestic assault in the first degree and that the range of punishment was 10 to 30 years or life in prison; he had a right to a trial by judge or jury; he had a right to have an attorney represent him throughout the proceedings; the court would appoint an attorney if Appellant could not afford one; Appellant would be bound by the same rules of evidence and procedure as the prosecutor or any attorney; the court would not function as his attorney or give him legal assistance or advice; Appellant could request the assistance of counsel at any time during the proceedings even though he had waived his right to counsel; Appellant was aware that any recommendations by the prosecuting attorney or other prosecuting official were not binding on the judge and might or might not be accepted by the judge; and if Appellant pled guilty or was found guilty of the charge, the judge was most likely to impose a sentence of confinement.

The trial court asked Appellant if he understood that if he relinquished his right to counsel and then requested counsel la-

ter in the trial that he would no longer be acting *pro se.* Appellant responded, "Yes and no. I understand that if I ask for assistance of counsel her counsel would only be as a standby as to where she would not allow me to make a decision that would—further affect my sentencing so other than that, no." Then the trial court stated, "Let's go through it again," and stated that Appellant could request the assistance of counsel at any time during the proceedings even though he had waived his right to counsel. Appellant indicated that he understood that.

The court asked Appellant if he understood that he would have to ask questions and present evidence in accordance with the technical legal rules of evidence and Appellant indicated that he understood. The trial court asked Appellant if he understood that if he disrupted the trial or got confused by the rules of procedure, this would be a great disadvantage to him, and if he understood that if Appellant looked like he did not know what he was doing in front of the jury, this would hurt him. Appellant indicated that he understood. The trial court asked Appellant if he understood that if the judge had to stop the trial and bring in a lawyer to represent him, "you and your lawyer will be in a serious disadvantage at that point?" Appellant replied, "Yes, sir, I do."

The trial court then asked, "Knowing this, do you still wish to proceed *pro se* ?" and Appellant responded, "Yes, sir." The trial court then stated "Now, I have no inclination to appoint standby counsel for you. Are you ready to proceed *pro se* then?" Appellant stated, "Yes, sir."

The trial court warned Appellant again, "Okay. So do you understand that I believe that it's very likely that you will be convicted if you represent yourself in this matter?" Appellant answered, "Yes, sir." The trial court asked Appellant if he un-

derstood that it would be practically impossible to negotiate a plea bargain or deal with a prosecutor by himself, and Appellant indicated that he understood. Appellant indicated that he understood that he would have to ask proper questions of prospective jurors, know the legal grounds to objecting to jurors, and know how to make peremptory challenges. The trial court asked if Appellant understood that at trial he would have to know when and how to object to evidence and, to do so, he would need to know something about hearsay evidence rules, relevancy, and use of prior convictions to impeach witnesses, but if he failed to make a proper objection, evidence would come in which would damage his chances with the jury. Appellant indicated that he understood all of these things. Appellant understood that any questions he asked witnesses would have to follow the rules, and if not, objections by the State would be sustained. Appellant understood that if he was the one asking questions, he might say something that would influence the jury against him or suggest that he knew something that he was trying to hide. The trial court asked Appellant again if he wanted to be his own lawyer and Appellant responded, "Yes, sir."

The following exchange occurred next:

Q: Has anybody threatened you, mistreated you, or offered you any promise or consideration or in any way forced you to act as your own lawyer?

A: No, sir.

Q: For the last time I'm going to strongly advise you against representing yourself *pro se,* but is that what you want to do is represent yourself *pro se?*

A: Yes, sir.

Q: Do you have any mental health issues?

A: No, sir.

Q: Have you ever been under the care of a psychiatrist?

A: No, sir.

Q: Have you ever been committed because you allegedly suffer from a mental disease or defect?

A: No, sir.

The prosecutor asked Appellant to reconsider his decision to represent himself, and stated to the court, "I think if he fires [the public defender] and goes it alone, I think he's in serious jeopardy of being convicted, and I just want it clear on the record that he still wants to go *pro se* even though he's not getting her as a standby counsel as well." The trial court asked Appellant if he understood what the prosecutor had said, and Appellant replied, "Yeah. That's what you said. I couldn't have it so if I had a choice, I would represent myself."

The trial court then made its finding that Appellant was fully informed of his right to the assistance of counsel and understood that right, and that Appellant was literate and mentally competent. The trial court asked Appellant how far he had gone in school, and Appellant indicated that he had completed the eleventh grade. The trial court then made its finding that Appellant had knowingly, voluntarily and intelligently waived his right to be represented by counsel and with a full knowledge and understanding of the right and an understanding of the consequences and the effect of the waiver of that right. The trial court then ordered that Appellant proceed *pro se*.

On October 6, 2010, the trial court heard pre-trial motions. At the hearing, the following exchange occurred:

Q: Now I'm going to ask you again today, and do you still wish to represent yourself in this matter? And I've cau-

tioned you because I think you're making a bad decision.

A: Now in the event I didn't represent myself, would I be—

Q: The only thing I could do is [previously appointed public defender] would be your attorney.

A: No, sir. I don't want [previously appointed public defender].

Q: Then there's nothing I can do, but I would hope you would reconsider this between now and the time I see you next Friday. She's an excellent attorney. She's tried a case in here a couple weeks ago.

A: Yes, sir.

Q: But I'm just telling you that, okay. So it is still your desire to represent yourself?

A: If I'm going to have her, yes, sir.

On October 15, 2010, the trial court again heard pre-trial motions. Another public defender for St. Louis County was present. The trial court stated for the record that it had met with said public defender and told him that Appellant was making a poor decision in representing himself, and that said public defender had agreed to be co-counsel in the case with the previously appointed public defender, but Appellant rejected that offer.

Appellant stated that he would accept co-counsel, but that he wanted to be in charge. The trial court repeated that it was not going to approve standby counsel, but had offered to Appellant the previously appointed public defender and the present public defender as co-counsel, but Appellant did not want that. Appellant responded, "Co-counsel, yes. Stand-by counsel, if it's not going to be stand-by counsel, no, sir, I don't want it." The trial court stated, "Then the offer has been declined to have [both public defenders] as co-counsel

representing you, and I am not going to have them be stand-by counsel."

Again at another pre-trial hearing on October 27, 2010, the trial court advised Appellant that he was "making a bad decision" in representing himself.

### Trial

Trial was held on November 8 and 9, 2010. After the State rested its case, Appellant informed the Court, "I wanted—I was trying to see to get counsel," to which the trial court responded:

I'm sorry, but it's too late for me even— to even consider that at this point. The State has rested its case. I gave you I don't know how many opportunities to have an attorney, and I even had the Public Defender offer to put two attorneys on this case, and you told me that unless they can be ready for the trial yesterday that you did not want an attorney, so that request will be denied.

After trial, the jury found Appellant guilty as charged, and the trial court sentenced Appellant to life in prison. This appeal follows.

### Points on Appeal

In his first point, Appellant maintains that the trial court plainly erred in allowing him to proceed to trial without counsel, and in denying his request for counsel after the State rested, in violation of his rights to due process of law and to the assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution, and under the waiver that he signed, in that Appellant did not knowingly, voluntarily, and intelligently waive his right to counsel because he was not advised of possible defenses or of the fact that he would not be able to claim ineffective assistance of counsel if he proceeded

*pro se*, and further, after having Appellant execute a waiver stating that he could request counsel at any time in the proceedings, the court told Appellant when he requested counsel that it was too late to even consider. Appellant claims that his conviction and life sentence without counsel or a valid waiver will inexorably result in a manifest injustice.

In his second point, Appellant asserts that the trial court plainly erred and abused its discretion in failing to *sua sponte* prevent the State from introducing hearsay testimony, in violation of Appellant's rights to due process of law, to a fair trial, and to confront the witnesses against him, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 18(a) of the Missouri Constitution, in that W.J. testified that his sister "told" him, through a system of eye blinks, that Appellant was the one who set her on fire. Appellant states that he could not confront Victim about W.J.'s assertion about her nonverbal statement because she had no memory of making it. Appellant maintains that his conviction and life sentence, based even in part on this improper testimony, will inexorably result in a manifest injustice.

In his third point, Appellant contends that the trial court plainly erred in admitting the testimony of Dr. David Seltzer (Dr. Seltzer) and the records from Barnes Hospital of Appellant's treatment there, in violation of his physician-patient privilege, his rights to due process of law and a fair trial, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 18(a) of the Missouri Constitution, in that Dr. Seltzer was Appellant's treating physician for the burns Appellant suffered, and was incompetent to testify as to all information necessary to treat Appellant; this

necessarily included the nature of Appellant's burns and the statements he made as to how he received them. Appellant maintains the admission of this evidence inexorably resulted in a manifest injustice.

### Standard of Review

■ The errors alleged in Appellant's three points are raised for the first time on appeal; therefore, we may only review for plain error under Rule 30.20.[3] *State v. Collins*, 290 S.W.3d 736, 743 (Mo.App. E.D.2009). Rule 30.20 provides, in pertinent part, that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted." Rule 30.20. "The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review." *Collins*, 290 S.W.3d at 743–44. "In determining whether to exercise our discretion under the plain error rule, we look to determine whether on the face of the defendant's claim substantial grounds exist for believing the trial court committed a 'plain error' which resulted in manifest injustice or a miscarriage of justice." *Id.* at 744.

■ The defendant bears the burden of showing that an alleged error has produced such a manifest injustice. *State v. Isa*, 850 S.W.2d 876, 884 (Mo.banc 1993). Mere allegations of error and prejudice will not suffice. *Id.*

### Discussion

#### Point I—Self–Representation

■ An accused has a constitutional right under the Sixth Amendment to represent himself. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975). The Fourteenth Amendment extends the Sixth Amendment right of self-representation to defendants charged in state courts. *State v. Gilmore*, 697 S.W.2d 172, 174 (Mo.banc 1985). In the instant case, Appellant requested to waive his right to counsel and represent himself, which the trial court granted after a lengthy and thorough examination of Appellant regarding his understanding of the consequences of doing so.

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must knowingly and intelligently forego those relinquished benefits ... Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.

*Faretta*, 95 S.Ct. at 2541. However, "[t]he defendant's knowledge of *all* relevant facts need not appear in the trial record to support a finding that the waiver of counsel was proper." *State v. Hunter*, 840 S.W.2d 850, 858 (Mo.banc 1992), citing *Gilmore*, 697 S.W.2d at 174.

Appellant maintains that the trial court erred in not advising him of possible defenses. In support of this claim, Appellant relies on *State v. Schnelle*, 924 S.W.2d 292, 297–98 (Mo.App. W.D.1996), in which the Court stated that the cases *State v. Tilley*, 548 S.W.2d 199, 201 (Mo.App.St.L.1977), *State v. Bethel*, 896 S.W.2d 497, 500 (Mo. App. S.D.1995); *State v. Wilson*, 816 S.W.2d 301, 307 (Mo.App. S.D.1991); *Hunter*, 840 S.W.2d at 858–9; and *Morris*

**3.** All rule references are to Mo. R.Crim. P.2010, unless otherwise indicated.

*v. State,* 456 S.W.2d 289, 293 (Mo.1970), require that:

> [I]n order to show that a waiver was knowing and intelligent, the trial court should make a record demonstrating (1) that the defendant timely understood that he would have to represent himself at trial if he failed to hire counsel; and (2) that the defendant was adequately informed about the nature of the charges against him, the severity of the sentences he could receive, and the type of the defenses he could offer, prior to the time he waived counsel.

Although possible defenses are listed among the things the trial court should inquire into the defendant's knowledge about, none of these cases held that the singular failure to advise the defendant of possible defenses to the crime with which he is charged merits reversal. Rather, the *Tilley* court found that the trial court made no inquiry at all into the defendant's understanding of the charges against him or about the various pitfalls of representing himself:

> It is clear after a fair reading of the record that defendant understood that he had a constitutional right to be represented by counsel and that he did not desire counsel who had been appointed for him to continue to represent him because this lawyer was insisting that he plead guilty. *However, there is no indication in the record that defendant understood the dangers and disadvantages of self-representation,* as required by the authorities cited herein. The court *made no examination into defendant's awareness of the elements of the offense charged, possible defenses and mitigating circumstances.*

*Id.* at 201 (emphasis added). Likewise, the *Schnelle* court found that:

> The trial court made *no record at all* of any proceedings involving Mr. Schnelle prior to the day of trial other than docket entries showing that Mr. Schnelle was arraigned, was unrepresented, and that a trial date was set. None of these documents indicate that Mr. Schnelle was given the information he needed, under the above cases, in order to make a knowing and intelligent waiver.

*Id.* at 298 (emphasis added).

Similarly, in *State v. Davis,* 934 S.W.2d 331, 334–35 (Mo.App. E.D.1996), we found that:

> There is *nothing* in the record to indicate that defendant understood the dangers and disadvantages of self-representation. *The trial court did not inform defendant of the elements of the charged offense, the range of punishment nor the possible defenses and mitigating circumstances. Further, the trial court did not inform defendant that he would be at an extreme disadvantage by appearing pro se.* The trial court simply informed defendant that he would have to represent himself if he failed to obtain counsel. In short, the trial court failed to determine that defendant understood the perils of self-representation.

*Id.* at 335 (emphasis added).

None of the cases cited by Appellant hold that the singular failure to advise the defendant of the possible defenses to his charged crime merits reversal and, in any event, they are all distinguishable from the case at bar because each one features a complete lack of record or a substantial paucity of information about the perils of representing oneself given by the court to the defendant. A lack of information given or inquiry made could not be more *non* descriptive of the situation in the case below, where the trial court's repeated detailed explanation to Appellant of his right to counsel, the advantages of accepting appointed counsel, the gravity of waiving

counsel and the seriousness of the charges against him extended over a four-month period at four different hearings. See, e.g., *Wilkins v. State*, 802 S.W.2d 491, 502 (Mo.banc 1991).

As set forth in part, not even in its entirety, in the procedural background of this opinion, the trial court thoroughly examined Appellant as to his understanding of the proceedings; exhaustively explained to and advised Appellant in detail of the multiple perils of representing himself; personally advised him on several occasions not to represent himself; and constantly asked him over the span of months whether he had changed his mind about representing himself. Throughout, Appellant resolutely stated his desire to waive appointed counsel and proceed *pro se*.

■ In *State v. Jenkins*, 304 S.W.3d 777, 783 (Mo.App. S.D.2010), the Court noted that there is no specific list of items of which the defendant must be advised when seeking to represent himself:

> A defendant in a criminal case who declines counsel, appointed or otherwise, and faces the possibility of incarceration should be admonished of the perils of self-representation. A defendant in such circumstances must be so advised of the difficulties of self-representation as to make an intelligent decision on proceeding *pro se*. *No specific litany is required*. The trial court should give such advice as is necessary to establish the defendant is acting knowingly and intelligently.

(Emphasis added.) In accord, *Wilson*, 816 S.W.2d at 305; *Bethel*, 896 S.W.2d at 500; and *Davis*, 934 S.W.2d at 334.

■ Rather, the analysis is more broad-based. "The test for determining if the waiver is made intelligently and knowingly depends on the 'particular facts and circumstances surrounding the case, includ-

ing the background, experience, and conduct of the accused.'" *Hunter*, 840 S.W.2d at 858, quoting *Wilkins*, 802 S.W.2d at 501. "The defendant's knowledge of all relevant facts need not appear in the trial record to support a finding that the waiver of counsel was proper." *Hunter*, 840 S.W.2d at 858, citing *Gilmore*, 697 S.W.2d at 174–75.

Additionally, as noted by the State, a requirement that the trial court give detailed advice to the defendant as to possible defenses would place the trial court in the position of counsel for the defendant and would require the trial court to conduct an investigation in order to determine what defenses would be applicable. Such a far-reaching requirement would be untenable and would in fact be contrary to the role of the court as an impartial arbiter.

■ Appellant next argues that the trial court erred when it failed to advise him that he would not be able to claim ineffective assistance of counsel if he proceeded *pro se*. It has been specifically held that the trial court does not have to expressly inform a defendant waiving representation that he cannot subsequently claim inadequacy of representation. *State v. Ehlers*, 685 S.W.2d 942, 946 (Mo.App. S.D.1985). Appellant again cites *Davis* but as previously noted the *Davis* defendant's conviction and sentence were reversed because this Court found that the defendant had not been informed of *any* of the perils of self-representation. *Id.* at 335.

■ The Court of Appeals has stated that when determining whether a defendant should represent himself, the trial court should 1) advise the defendant of the dangers and disadvantages of self-representation, 2) inquire into the defendant's intellectual capacity to make an intelligent decision, and 3) make the defendant aware that, in spite of his efforts, he cannot after-

wards claim inadequacy of representation. *Davis,* 934 S.W.2d at 334; *State v. Quinn,* 565 S.W.2d 665, 676–77 (Mo.App.St.L. 1978). In *Davis,* we reversed the defendant's conviction and sentence because we found that the trial court committed plain error in allowing the defendant to proceed to trial *pro se* without advising the defendant as to the dangers and perils of self-representation; however, our holding did not turn on the trial court's failure to advise the defendant that he could not afterwards complain of inadequate representation. Rather, as noted supra, the *Davis* defendant was not cautioned as to any of the pitfalls of representing himself, nor were any of the recommended inquiries made or advisements given to him with regard to self-representation. See *id.* at 334–35. Rather, he was informed simply that if he did not retain counsel, he would have to represent himself. *Id.* Such a deficient warning is clearly insufficient under the standards and guidelines set forth by Missouri case law.

In the instant case, on the other hand, Appellant was questioned extensively regarding his competency to knowingly and intelligently waive his right to counsel, and was thoroughly advised about and examined regarding the perils of representing himself, the seriousness of the charge against him, the possible sentences, general trial procedures, the technical requirements of a trial, his education, and mental status. Appellant was advised he would not be given special treatment as a *pro se* litigant, but held to the standards of any lawyer. The trial court offered Appellant several combinations of attorney representation to attempt to induce him to accept legal assistance but Appellant continuously declined and expressly indicated a desire to represent himself, both in open court and in formal written motions.

We conclude that the record before us supports that Appellant knowingly and intelligently waived his right to counsel and chose to proceed *pro se,* and the trial court did not commit plain error in allowing Appellant to proceed to trial without representation of counsel. No manifest injustice has occurred.

Appellant also asserts as plain error in Point I the court's failure to appoint counsel for him when he asked for counsel at the close of the State's case, despite the waiver's language stating that he could request counsel at any time in the proceedings. Appellant presents no argument whatsoever in support of this assertion of error in the argument portion of his brief. "Arguments raised in the points relied on portion of an appellate brief that are not supported in the argument portion of the brief are deemed abandoned and preserve nothing for appellate review." *State v. Nunley,* 341 S.W.3d 611, 623 (Mo.banc 2011). Despite such abandonment, we review *gratis* and see no error in the trial court's decision not to appoint counsel for Appellant at such a late point in the proceedings, and after giving Appellant many opportunities to change his mind regarding representing himself and vehemently urging Appellant to accept appointed representation on several occasions.

A trial court is not categorically required to allow a criminal defendant to withdraw a previously entered, valid waiver of counsel at any time he so desires. *State v. Richardson* 304 S.W.3d 280, 287–290 (Mo.App. S.D.2010). *Richardson* recognized the paucity of Missouri case law on the scenario present in this case, and analogized case law in similar situations in *State v. Morton,* 648 S.W.2d 642 (Mo.App. S.D.1983) and *State v. Parker,* 890 S.W.2d 312 (Mo.App. S.D.1994).

In *Morton,* 648 S.W.2d at 642, the defendant waived his right to a jury trial, the

matter was scheduled for a bench trial, and then several weeks before trial he decided to withdraw his jury trial waiver. The trial court decided the defendant was not entitled to withdraw his waiver. On appeal, the Court found that an accused does not have a constitutional right to withdraw a valid jury trial waiver, and that whether that waiver may be withdrawn is discretionary with the trial court. *Id.* at 643.

In *Parker*, 890 S.W.2d at 312, the defendant filed a motion to proceed *pro se* a mere day prior to trial and requested a continuance so that he could prepare his defense. The trial court refused this request and ordered the defendant to proceed to trial with counsel. *Id.* On appeal, the Court found that if the defendant's motion had been allowed, a continuance would have been necessary, which is not the intended use of the right of self-representation. *Id.* at 316. Accordingly, the Court found that "[i]n such a case, the motion ... is addressed to the sound discretion of the trial court," and "[u]nder the circumstances, the trial court did not abuse its discretion when it denied [the defendant's] request ... on the Friday preceding the Monday the trial was to start." *Id.* at 316–17.

In the instant case, the parties were *halfway through trial* when Appellant changed his mind. The State had finished putting on its entire case. Appellant's request for counsel at such point would have necessitated a continuance in the middle of trial in order for counsel to become familiar with the case in order to effectively represent Appellant. Additionally, appointed counsel would have missed any opportunities for objections and other strategic participation during the State's case-in-chief. In such a situation, Appellant's oral request is addressed to the sound discretion of the trial court, and we find no abuse of discretion or plain error in its refusal of said request.

For the foregoing reasons, Point I is denied.

### Point II—Hearsay

At trial, W.J. testified on direct examination regarding his December 19, 2009 visit to Victim at the hospital as follows:

Q: She wasn't able to talk or verbalize at that time. She had the tubes in her throat?

A: Yes, the tube in her throat.

Q: Did you ask her any questions?

A: Yes, I did.

Q: And what did you ask her?

A: I asked her to blink her eyes twice if somebody did this to her and she did.

Q: She blinked twice?

A: Uh-huh, and I told her to blink once if [Appellant] did this to her and she did.

Q: And then the hospital got the police involved at that point?

A: Yes.

Appellant maintains that this testimony is inadmissible hearsay because he could not confront Victim about W.J.'s assertion about her nonverbal statement because she had no memory of making it.

Even if the court finds hearsay evidence was improperly admitted, the conviction will be reversed only if the defendant can prove both error and prejudice. *State v. Hamilton*, 892 S.W.2d 371, 378 (Mo.App. E.D.1995), citing *Isa*, 850 S.W.2d at 895. To establish plain error due to the erroneous introduction of evidence, there must be apparent prejudice to the defendant. *State v. Presberry*, 128 S.W.3d 80, 86 (Mo.App. E.D.2003). An allegedly wrongful admission of hearsay testimony does not constitute plain error if such testimony is merely cumulative to other evidence properly admitted. *State v.*

*Goodwin*, 43 S.W.3d 805, 818 (Mo.banc 2001). A defendant is not prejudiced by hearsay testimony that is merely cumulative of evidence already before the trial court, especially if that evidence was presented by another witness who was subject to cross-examination. *State v. Bynum*, 299 S.W.3d 52, 61 (Mo.App. E.D.2009).

 Here, W.J.'s testimony as to Victim's eye blinking in response to his questions as to whether Appellant set her on fire was merely cumulative to other evidence that supported Appellant's conviction. Victim testified that Appellant poured gasoline on her and set her on fire. As such, even if W.J.'s testimony as to the eye blinks was hearsay, it was cumulative to other evidence that Appellant set Victim on fire. Furthermore, since Victim and W.J. both testified at trial, Appellant had the opportunity to cross-examine them both about their testimony. Prejudice will not be found from the admission of hearsay testimony where the declarant was also a witness at trial, testified on the same matter, and was subject to cross-examination. *State v. Steele*, 314 S.W.3d 845, 850–51 (Mo.App. W.D.2010). Because the evidence was cumulative and Appellant had the opportunity to cross-examine Victim and W.J. at trial, Appellant suffered no prejudice. We find no plain error in the admission of this testimony. Point II is denied.

### Point III—Physician–Patient Privilege

Dr. Seltzer, the emergency room physician at Barnes Hospital who treated Appellant on the date of the incident for burn injuries to his hands, testified that Appellant stated that he received these injuries when he was lighting a furnace. Dr. Seltzer also read into evidence Appellant's medical records from that day where Appellant made such a statement. These records were admitted into evidence. Dr.

Seltzer testified that it was his opinion that the burns on the backs of Appellant's hands would not be consistent with protecting oneself from a furnace fire or from trying to put out a fire.

Appellant maintains the admission of Dr. Seltzer's testimony is in violation of his physician-patient privilege and that Dr. Seltzer was incompetent to testify at trial pursuant to such privilege.

Section 491.060, titled "Persons incompetent to testify—exceptions ...," also commonly known as the physician-patient privilege statute, provides:

> The following persons shall be incompetent to testify:
>
> . . .
>
> (5) A physician licensed pursuant to chapter 334 ... concerning any information which he or she may have acquired from any patient while attending the patient in a professional character, and which information was necessary to enable him or her to prescribe and provide treatment for such patient as a physician, chiropractor, psychologist or dentist.

 The purpose of the physician-patient privilege is to enable the patient to secure complete and appropriate medical treatment by encouraging candid communication between patient and physician, free from fear of the possible embarrassment and invasion of privacy engendered by an unauthorized disclosure of information. *State ex rel. Dean v. Cunningham*, 182 S.W.3d 561, 566 (Mo.banc 2006). However, the physician-patient privilege is not absolute. *Id.* The patient can waive the statutory privilege either by express or implied waiver. *Id.*

 To preserve evidentiary questions for appeal, there must be an objection giving the grounds at the time the evidence is sought to be introduced and

the same objection must then be carried forward in the appeal brief. *Carter v. St. John's Regional Medical Center*, 88 S.W.3d 1, 18 (Mo.App. S.D.2002). Grounds for excluding evidence that are not stated in an objection are waived. *Id.* Here, Appellant made no objection to the admission of Dr. Seltzer's testimony or the corresponding medical records, and thus Appellant has waived his physician-patient privilege. Additionally, Appellant has made no showing that the results of the trial would have been any different had Dr. Seltzer's testimony about the explanation Appellant gave for the burns on his hands and his opinion as to the medical possibility of that explanation had been excluded. Under plain error review, there is no prejudice to Appellant. Point III is denied.

### Conclusion

The judgment of conviction and sentence is affirmed.

ROBERT G. DOWD, JR., J., and MARY K. HOFF, J., concur.