**Paul GARTH, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. ED 99533.**

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 22, 2013.

---

Roxanna A. Mason, St. Louis, MO, for appellant.

Chris Koster, Timothy A. Blackwell, Jefferson City, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

Paul Garth ("Movant") appeals from the judgment of the motion court that denied his motion for post-conviction relief pursuant to Rule 29.15 without an evidentiary hearing. Finding no error, we affirm.

Movant was charged by indictment with first-degree domestic assault in violation of Section 565.072 RSMo (Cum.Supp.2006) for events that happened on December 18, 2009. The facts in that case are as follows. In December 2009, Movant was living with Victim as her boyfriend. *State v. Garth*, 352 S.W.3d 644, 647 (Mo.App.2011). Victim broke off their relationship after Movant wrote "I love u" on a bullet and gave it to Victim. *Id.* On December 17, 2009, Movant went to Victim's house that evening, purportedly to drop off keys and get his belongings and they argued into the night. *Id.* At approximately 2:00 a.m. the next morning, December 18, 2009, Movant went to the basement and got a can of gasoline, which he poured on Victim, stating that if he couldn't have her, no one would. *Id.* Movant then set her on fire with a lighter. *Id.* After the fire was extinguished, Victim eventually persuaded Movant to take her to the hospital by promising that she would tell the hospital personnel that she injured herself. *Id.* Movant took Victim to the hospital, where Victim stated that she tried to kill herself by pouring gasoline on herself and lighting it because her grandmother had just died. *Id.* Victim went into shock and lost consciousness. *Id.* The next day, Movant called Victim's ex-mother-in-law., and told her that they had been messing with a gas can on the stove and Victim lit a cigarette and "blew herself up." Victim in fact had an electric stove.

Victim's son heard about it and called Movant, who told him that Victim poured kerosene on herself and lit herself on fire. *Id.* He asked Movant why he did not call 911 or notify family members, to which Movant responded that he had been trying to extinguish the fire and had burnt his hands. *Id.* Victim's brother, W.J., visited her at the hospital and was told by hospital personnel that Victim had said that she had done this to herself. *Id.* at 648. Victim had tubes down her throat and was unable to speak, but W.J. asked her to blink her eyes twice if somebody had done this to her and she blinked twice. *Id.* W.J. then asked her to blink once if Movant had done this to her and she blinked once. *Id.* Hospital personnel called the police. *Id.* At Victim's house, the police observed a large burn mark on the dining room carpet, burn marks on the bathroom cabinet and floor, burnt clothing in the kitchen trash can, a burned bathroom rug at the bottom of the basement steps, and a gasoline can in the basement. *Id.*

On December 22, 2009, after the tubes were removed from Victim's throat, she told the police that Movant had tried to kill her by setting her on fire. *Id.* Victim went into cardiac arrest but survived. *Id.* Victim was discharged from the hospital on January 5.2010, but was still being treated regularly for her injuries at the time of trial in November, 2010. *Id.*

Movant initially was represented by a public defender, but prior to trial filed a motion to represent himself and requesting standby counsel because he was unhappy with his representation by that public defender. The trial court went over the waiver of counsel form with Movant, repeatedly cautioning him of the dangers of proceeding *pro se,* and telling him that he was not inclined to appoint standby counsel. The trial court advised Movant against waiving counsel. The State asked Movant to reconsider his decision to proceed *pro se.* Movant declined. The trial court found that Movant had been fully informed of his right to counsel, understood that right, and was literate and mentally competent. It also found that Movant knowingly, voluntarily and intelligently waived his right to be represented by counsel. Later, in pre-trial motions, another public defender offered to be co-counsel with the previously appointed public defender whom Movant had discharged. Movant had previously refused that offer, and refused it again, as he wanted them only as standby counsel. The trial court declined to have the public defenders act as standby counsel.

After Movant filed his motion to represent himself, he also filed a request for phone access, to state and federal law books, for internet access for legal work, and for a private investigator. The trial court issued an order in response that noted that Movant had the same access to a phone and visitors that all jail inmates had and had access to a law library. It ordered St. Louis County Justice Services to reasonably accommodate Movant's access to the law library. The trial court noted that inmates have no access to the internet, and stated that the trial court would provide any relevant legal case that Movant could not access in the law library. It declined to rule on the request for a private phone and private investigator until Movant had the opportunity to demonstrate why he needed a private phone and a private investigator, with specific details. Movant filed another motion in response, which stated, among other things, that he did not have full access to a law library and full volumes of state and federal law books, and was unable to Shepardize cases. Movant followed this with a letter to the trial court stating that he still did not have full access to law books from the St. Louis County Justice Center, including access to

full volumes of federal and state law books, Corpus Juris Secundum, Missouri Practice & Procedure, Shepard Citations, and Georgetown Law Review. The trial court responded with an order that noted Movant's letter, and ordered that all previous orders to remain in full force and effect.

Movant was convicted of first-degree domestic assault after a jury trial and sentenced to a term of life imprisonment. Movant's conviction was affirmed on direct appeal in *Garth*, 352 S.W.3d 644. Movant timely filed a motion for post-conviction relief pursuant to Rule 29.15. Appointed counsel timely filed an amended motion in which Movant alleged that he unknowingly waived his right to testify because the trial court failed to advise him that he could testify in the narrative, that appellate counsel was ineffective for failing to raise on appeal that Movant had inadequate access to a law library, which impaired his defense, and that appellate counsel was ineffective for failing to raise on appeal that the State improperly led its witnesses on direct examination.

The motion court denied Movant's amended motion without an evidentiary hearing. It made a number of findings and conclusions. Regarding Movant's claim that the trial court's "failure" to notify him that he could testify in the narrative resulted in an unknowing waiver of his right to testify, the motion court first concluded that this claim of error, as an assertion of trial court error, should have been raised on direct appeal and was not cognizable in a Rule 29.15 motion. It noted that Movant cited to no case law, state or federal, in support of this claim in its amended motion. The motion court also extensively reviewed the trial court's efforts to ensure that Movant's waiver of counsel was knowing, voluntary, and intelligent, found that it was clear from the record that Movant was advised of his right to testify and waived that right knowingly and voluntarily. It also found that the trial court has no duty to also inform a *pro se* defendant that he can testify in the narrative. It further found that, in light of all of the evidence against Movant, that his proposed testimony was not credible and would have had minimal effect on the outcome of the case.

On the claim that appellate counsel was ineffective for failing to raise the issue that Movant was denied access to legal materials to prepare his defense, the motion court found that it to be clear from the transcript and legal file that Movant had access to a law library with legal materials, and that Movant acknowledged this repeatedly in the record. It noted that his real complaint was that he did not have full access to all the materials that he wanted and that he had limited time due to other inmates using materials. The motion court noted that the right to proceed *pro se* does not necessarily include the right to access to a law library or another affirmative aid from the State, and that purported inadequacies of a jail law library does not deny meaningful access to the courts. It found that Movant made no offer of proof that the books that he wanted had information about leading questions or objections to evidence, and no offer of proof or showing that if such objections had been made that the outcome of the case would have been different at trial or on appeal. It found that Movant made no allegation or offer of proof as to how he was prejudiced by not having those specific books, and that he was unable to show that the verdict would have been different if he had those particular books, or that if appellate counsel had raised this issue that this Court would have reversed. The motion court found that the evidence against Movant was "overwhelming[,]" and proceeded to summarize the evidence. It found that it was "clear from the record"

that having those law books for a longer time would not have changed the outcome of the case at trial or on appeal had appellate counsel raised the matter.

Regarding the claim that appellate counsel was ineffective for failing to raise the issue of the State's use of leading questions at trial, it found that most of Movant's examples came from redirect examination, and a not overly large number of arguably leading questions were on direct examinations. It noted that Movant was warned repeatedly about the dangers of proceeding *pro se,* including that he would be held to the same standards as an attorney and that the trial court would not assist him, and that the trial court had no duty to *sua sponte* intervene. It found that the record clearly refuted Movant's allegation that the State essentially told the witnesses' stories for them, and that Movant's claims were "exaggerated and misleading." The motion court found that there was no argument to be made that the "minimal" use of leading questions had any impact on the jury, much less any prejudicial impact. It found that there was no offer of proof that the outcome of the case on trial or on appeal would have been different if objections had been made. The motion court also found that it was clear from the record that the evidence against Movant was overwhelming.

The motion court concluded that Movant failed to establish by a preponderance of the evidence that any prejudice occurred as a result of appellate counsel's alleged ineffectiveness or that the result would have differed if appellate counsel had acted in any other fashion. It further concluded that Movant's appellate counsel provided effective assistance of counsel, and that Movant was not denied any rights under the terms of the U.S. Constitution or the Missouri Constitution. It denied Movant's motion.

Movant now appeals from this judgment.

Our review of the denial of postconviction relief by a motion court is limited to the determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); *Zink v. State,* 278 S.W.3d 170, 175 (Mo. banc 2009). Movant bears the burden of proving his claims by a preponderance of the evidence. Rule 29.15(i). A motion court's findings of fact and conclusions of law are clearly erroneous only if the reviewing court firmly believes that a mistake was made after it has reviewed the whole record. *Kuhlenberg v. State,* 54 S.W.3d 705, 707 (Mo.App.2001).

" 'To prevail on a claim of ineffective assistance of appellate counsel, the [m]ovant must establish that counsel failed to raise a claim of error that was so obvious that a competent and effective lawyer would have recognized and asserted it.' " *Williams v. State,* 386 S.W.3d 750, 753 (Mo. banc 2012) (quoting *Taylor v. State,* 262 S.W.3d 231, 253 (Mo. banc 2008)). In order to be entitled to relief, the movant must show that there is a reasonable probability that the outcome of the appeal would have been different. *Id.*

A Movant is entitled to an evidentiary hearing on a motion for post-conviction relief only if: (1) he alleges facts, not conclusions, warranting relief; (2) the facts alleged are not refuted by the record; and (3) the matters complained of prejudiced the Movant. Rule 29.15(h). *Walker v. State,* 232 S.W.3d 586, 588 (Mo.App.2007).

In his first point relied on Movant contends that the motion court erred in denying his amended motion for post-conviction relief without an evidentiary hearing because his claim that appellate counsel was ineffective for failing to assert an issue related to his lack of access to the legal resources necessary to present a defense

alleged facts that entitled him to relief that were not refuted by the record that resulted in prejudice to him.

■■■ There is no clear right for a *pro se* defendant to have access to a law library. *Kane v. Garcia Espitia,* 546 U.S. 9, 10, 126 S.Ct. 407, 408, 163 L.Ed.2d 10 (2005). The constitutional right at issue is meaningful access to the courts, which can be met by adequate law libraries for a *pro se* defendant, but also by other alternative means, including proffering assistance from available counsel. *See Chrisman v. State,* 288 S.W.3d 812, 819–20 (Mo.App. 2009); *State v. Rollie,* 585 S.W.2d 78, 87–88 (Mo.App.1979). Movant was offered a court-appointed public defender, and initially utilized her services, but he was not satisfied with that public defender, and requested to represent himself. The trial court, after lengthy examination of Movant, allowed him to proceed *pro se.* After Movant expressed dissatisfaction with the law library, the trial court offered Movant the services of his original public defender and an additional public defender to act as co-counsel. Movant rejected this offer. We concur with those jurisdictions that have held it satisfies the constitutional obligations of the state to provide a defendant with legal assistance to offer court-appointed counsel to represent the defendant, and that this provides meaningful access to the courts. *See U.S. ex rel. George v. Lane,* 718 F.2d 226, 230–33 (7th Cir.1983); *United States v. Wilson,* 690 F.2d 1267, 1271 (9th Cir.1982); *State v. Brandt,* 135 Idaho 205, 16 P.3d 302, 304 (Ct.App.2001); *State v. Brockenshire,* 26 Kan.App.2d 902, 995 P.2d 905, 907–09 (2000); *People v. Mack,* 190 Mich.App. 7, 475 N.W.2d 830, 838–40 (1991). Movant was not denied access to a law library or to legal materials to prepare his defense. The record on appeal reflects that he had access to and utilized these materials. He simply did not have unlimited access to the best law library, and there is no constitutional right to such. As the federal district court in *Bell v. Hopper,* 511 F.Supp. 452, 453 (S.D.Ga.1981) noted,

> A trial court cannot deny a defendant the freedom to choose to represent himself so long as he is competent to make the choice; this is so even if he obviously lacks the skill and knowledge necessary to present a good defense, and even if it seems that the choice would foreclose any likelihood of success.... A necessary corollary to this doctrine, however, is that the defendant who makes this choice must abide by the consequences of this choice.

The trial court did its best to dissuade Movant from proceeding *pro se,* and made sure that he was aware of the drawbacks and consequences. It ordered that Movant have access to the law library at the St. Louis County Justice Center. Appellate counsel was not ineffective for failing to raise a claim that was meritless and would not have changed the outcome of the appeal. *Browden v. State,* 340 S.W.3d 598, 601–02 (Mo.App.2011). Point denied.

To facilitate analysis, we will address Movant's third point relied on, which also involves a claim of ineffective assistance of appellate counsel. Movant asserts that the motion court erred in denying his motion for post-conviction relief without an evidentiary hearing because he alleged facts that entitled him to relief that were not refuted by the record that resulted in prejudice to him. He avers that appellate counsel was ineffective by failing to assert a point on appeal regarding "the State's habitual use of leading questions on direct examination[.]"

■■■ We note initially that this claim of error was not preserved. There were no objections to the leading questions and the issue was not raised in a motion for a

new trial. Appellate counsel is not ineffective for failing to assert unpreserved claims of error. *Tisius v. State,* 183 S.W.3d 207, 213 (Mo. banc 2006). However, "[w]here an alleged error that was not raised was not preserved, the right to relief due to ineffective assistance of appellate counsel tracks the plain error rule and requires that the error not raised be so substantial as to amount to a manifest injustice or a miscarriage of justice." *Anderson v. State,* 196 S.W.3d 28, 36 (Mo. banc 2006).

■ We also observe that Movant's amended motion and his appellate brief reflect that appellate counsel was aware of the issue of leading questions and chose not to pursue it separately on appeal, but rather argued on direct appeal that Movant did not knowingly, voluntarily and intelligently waive his right to counsel. Appellate counsel is not ineffective for failing to assert every non-frivolous claim on appeal, but rather may use his professional judgment to concentrate on the most important issues. *Barnes v. State,* 334 S.W.3d 717, 723 (Mo.App.2011).

■ There was no manifest injustice or miscarriage of justice here. Our review of the transcript indicates that the use of actual leading questions and possibly leading questions by the State on direct examination of witnesses, as opposed to re-direct examination, which accounts for many of the examples cited by Movant, was not as extensive as Movant argues here. Many of the examples referenced by Movant had nothing to do with the assault itself, but rather addressed matters that occurred thereafter, such as the victim's medical treatment. Moreover, there is no prejudice to Movant. Any objections to the allegedly leading questions would have simply resulted in the information being elicited in another manner. *See Street v. State,* 765 S.W.2d 630, 632 (Mo.App.1989).

The outcome of the case and the appeal was not affected by this questioning and the failure to assert it on direct appeal. Point denied.

In his second point relied on Movant argues that the motion court erred in denying Movant's amended motion for post-conviction relief without an evidentiary hearing because he alleged facts that entitled him to relief that were not refuted by the record and that he was prejudiced thereby in that the trial court failed to advise him of his right to testify in the narrative, thereby rendering his waiver of his right to testify unknowing and involuntary.

■ We note initially that despite Movant's claims to the contrary, this is a matter that could have been raised on direct appeal. The transcript reflects that there was no explicit statement from the trial court that Movant could testify in the narrative. A Rule 29.15 motion is not a substitute for direct appeal, and a movant cannot use it to assert claims that could have been raised on direct appeal except where fundamental fairness requires otherwise and even then only in "rare and exceptional circumstances." *Zink v. State,* 278 S.W.3d 170, 191 (Mo. banc 2009). No such exceptional circumstances exist here. There is no duty for a trial court to inform a defendant acting *pro se* that he can testify in the narrative. It is implicit in self-representation. The trial court advised Movant of his right to testify and inquired on more than occasion prior to the trial if Movant intended to testify, and each time Movant stated that he did not intend to do so.

■ In his brief Movant refers to the requirement of the trial court to explain the difficulties of self-representation in a fashion that permits the would-be *pro se* litigant to decide how to proceed. The

trial court thoroughly did so. This Court held on direct appeal that:

> [Movant] was questioned extensively regarding his competency to knowingly and intelligently waive his right to counsel, and was thoroughly advised about and examined regarding the perils of representing himself, the seriousness of the charge against him, the possible sentences, general trial procedures, the technical requirements of a trial, his education, and mental status. [Movant] was advised he would not be given special treatment as a *pro se* litigant, but held to the standards of any lawyer. The trial court offered [Movant] several combinations of attorney representation to attempt to induce him to accept legal assistance but [Movant] continuously declined and expressly indicated a desire to represent himself, both in open court and in formal written motions.

> We conclude that the record before us supports that [Movant] knowingly and intelligently waived his right to counsel and chose to proceed *pro self*

*Garth,* 352 S.W.3d at 655. The motion court did not clearly err in its findings of fact or conclusions of law. Point denied.

The judgment of the motion court is affirmed.

ROY L. RICHER, P.J., and GLENN A. NORTON, J., concur.