

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED106285 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Cape Girardeau County |
| v. | ) | 14CG-CR00946-01 |
| | ) | |
| TOMMY JOE DAVIS, III, | ) | Honorable Benjamin F. Lewis |
| | ) | |
| Appellant. | ) | FILED:  May 21, 2019 |

Before Sherri B. Sullivan, P.J., James M. Dowd, J., Robin Ransom, J.

PER CURIAM.

### Opinion

Tommy Joe Davis, III, ("Davis") appeals from a sentence and judgment entered

pursuant to a jury verdict convicting him of first-degree assault and armed criminal action.

He asserts the trial court erred in accepting his request to waive counsel and represent

himself pro se because the trial court failed to ensure his waiver was knowing and

voluntary, and because he demonstrated he was not able or willing to abide by the rules of

procedures and courtroom protocol.  We affirm.

### Background

The State charged Davis as a prior and persistent offender with one count of the

class A felony of assault in the first degree, in violation of Section 565.050, RSMo. (cum.

supp. 2014), and one count of armed criminal action ("ACA"), in violation of Section

571.015. The charges stemmed from an incident on June 4, 2014, where Davis caused serious physical injury to Christopher Watson by shooting him following a dispute over property.

Between Davis's August 2014 arraignment and his November 2017 trial, Davis changed counsel five times. The docket sheet shows his jury trial was originally set for March 2015, but was continued multiple times at Davis's request. Despite concurrent representation by counsel, beginning in January 2015, Davis began filing letters, requests, and motions from jail, including writs for habeas corpus and motions to dismiss, asserting various constitutional violations. As well, it appears from the record that Davis filed a civil action in federal court against the court clerk and the Cape Girardeau Sheriff's Department. At a pre-trial hearing in July 2016, the trial court read and explained in plain language the charges against Davis, to which Davis responded he did not understand. The State made a record in Davis's presence of the plea offer, and Davis's current counsel stated he had communicated the plea offer to Davis. In November 2016, he filed a "Notice of Nationality," declaring both his sovereignty as a Moor American National and the court's lack of jurisdiction over him.

In February 2017, the trial court noted after a pre-trial hearing that Davis "appeared to have difficulty comprehending the proceedings against him," and on its own motion ordered the director of the Missouri Department of Mental Health to have Davis examined to determine if Davis had a mental disease or defect, as result of which he lacked the capacity to understand the proceedings against him or to assist in his own defense. Davis largely refused to participate in the mental examination or to sign authorizations for release of information, but he did attend the interviews, during which he

professed to be part of the Sovereign Citizen movement, which believes an individual can withdraw his consent to be governed, thus removing himself from the jurisdiction of courts and police. As well, Davis acknowledged he was charged with "assault first," and he stated he had received an offer of 10 years.

The examiner opined with a reasonable degree of psychological certainty that Davis had no mental disease or defect, and he did not lack the capacity to understand the proceedings against him or to assist in his defense. The examiner stated that while Davis's use of bizarre pseudo-legal language and refusal to cooperate with legal proceedings made him sound delusional, he was not psychotic but rather he was espousing the extremist beliefs of the Sovereign Citizen movement. Last, the examiner noted the possibility that Davis was merely professing membership in the Sovereign Citizen movement in order to circumvent the criminal proceedings against him, in light of Davis's admission that he began to ascribe to this belief system only after his arrest.

At a pre-trial hearing in May 2017, Davis requested to represent himself pro se. The trial court had appointed counsel from the public defender's office, who was present at the hearing, but Davis reiterated he did not want the services of the public defender's office. The trial court informed Davis that even though he was representing himself, the trial would move forward, to which Davis objected the trial could not proceed without his consent and walked away from the podium. While Davis was present in the courtroom but refusing to participate in proceedings, the trial court again informed him of the charges against him and the range of punishment for the charges. Davis declared he did not understand the charges and objected to the whole process due to the trial court's lack of jurisdiction over him and due to his pending lawsuit against the judge. The trial court

3

stated for the record that Davis had been making eye contact with the court, speaking directly to the court about the case, and it was the court's opinion that Davis was fully aware of everything going on in the case. The trial court then granted the public defender's motion to withdraw.

The trial court held several pre-trial conferences after Davis was granted the right to represent himself pro se. At a September 2017 pre-trial hearing, Davis moved to dismiss the ACA charge as past the statute of limitations, which the trial court denied after confirming the charges were brought within the correct time frame. The trial court then warned Davis that it was a "very bad idea" for him to represent himself, stating Davis "ha[d] no idea what [he was] doing in court." Davis responded that he did not trust the public defender system and that the trial court could not force him to go to trial against his will. At an October 2017 pre-trial hearing, Davis filed several documents including a motion for bond reduction and another writ of habeas corpus, all of which the trial court overruled after characterizing them as "gibberish" and explaining that "none of this has anything to do with your case or the law applicable to your case."

At a pre-trial conference the day before trial, Davis confirmed that he still wished to proceed with his representation pro se, but he refused to sign a waiver of his right to counsel, stating he was refusing to waive any of his rights. The trial court read the waiver in open court with Davis present, but when asked if he understood the trial court would appoint him an attorney to assist him, Davis stated "no" and clarified he was refusing to answer any questions. As the trial court read Davis's rights to trial, to remain silent, and to appeal, Davis had to be restrained from leaving the room due to his overall objections to the trial court's lack of authority over him, claiming he was being held against his will.

4

The trial court signed Davis's waiver of counsel on his behalf, over Davis's objections. The State argued that Davis's waiver of counsel was knowing and voluntary, in that his mental evaluation found him competent, his numerous motions to the court demonstrated he was "clearly literate," he was well-spoken, and he had demonstrated his understanding of the proceedings although he objected to them. Finally, the trial court explained to Davis that it was not going to allow him to delay the trial, which had been set since May 2017.

At the November 2017 jury trial, before the venire panel entered, Davis stated his refusal to proceed with the trial until he received various documents that were explained to be not relevant to the proceedings or not in existence. Davis accused the trial judge of a conflict of interest due to Davis's pending civil action against the judge, posited a conspiracy against him by all members of the bar association, and generally declared the trial court to be without jurisdiction over him. The trial court threatened to have Davis removed if he was disruptive during voir dire, and Davis responded that he was refusing to participate in the "whole process," due to the trial court's lack of authority over him and conflict of interest. The trial court told Davis the trial would proceed without him and asked if he was choosing to remove himself from the courtroom, and the court further informed Davis that he could return if he changed his mind and chose to participate in the trial. Davis then left the courtroom.

When the venire panel was brought out, the trial court acknowledged that no one was at the defense table, explaining that Davis had both chosen to represent himself and, while he attended the pretrial conference that day, had chosen not to attend the trial and was in custody. The trial court stated the jury could not presume or infer guilt from

5

Davis's decision not to attend his trial. The State also clarified that if Davis decided to return during the trial he would have the opportunity to participate, stating that "we want to make sure that a fair trial is conducted" and the court would pick a jury that would be fair both to the State and to Davis. When several venirepersons expressed concern that Davis was not present nor represented by counsel, the trial court again informed them that Davis had chosen not to attend the trial. The trial proceeded in Davis's absence and he presented no defense.

After the trial, the jury convicted Davis of both counts. The trial court sentenced him as a prior and persistent offender to 30 years' imprisonment on the assault charge, consecutive to 20 years' imprisonment on the armed-criminal-action charge, for a total sentence of 50 years in the Missouri Department of Corrections. Davis did not file a motion for new trial. This appeal follows.

Discussion

In his sole point on appeal, Davis argues the trial court erred in accepting his request to waive counsel and represent himself pro se because the court did not ascertain Davis was competent to waive counsel, in that his waiver of counsel was not knowing and voluntary because the trial court did not ask him about his knowledge of any possible defense he might pursue and his knowledge of the trial process, and because there was no evidence that Davis was able and willing to abide by the rules of procedures and courtroom protocol. We disagree.

"A constitutional claim must be made at the first opportunity to be preserved for appellate review." *State v. Murray*, 469 S.W.3d 921, 925 (Mo. App. E.D. 2015). We do not expect, however, a defendant who has requested to represent himself to object to the

voluntariness of his waiver in order to preserve the issue for appeal, and thus a failure to object at this stage is excused. *Id.* Nevertheless, to preserve an issue for appellate review, it must be raised at the earliest possible opportunity, and a pro se defendant is held to the same standard as a lawyer and is expected to comply with all the rules of procedure. *See State v. Cox*, 563 S.W.3d 801, 806 (Mo. App. W.D. 2018). It is not unreasonable for this Court to assume that after the trial, during which no one appeared to present a defense for Davis, Davis could have recognized the potential error in the trial court permitting him to represent himself, and this was therefore the earliest opportunity for him to raise the issue in order to preserve it for appeal. Davis did not, however, file a motion for new trial raising any issues, and thus this issue is not preserved for our review.

We review unpreserved claims of error under Rule 30.20. Under plain-error review, we will reverse only if a plain error affecting substantial rights results in manifest injustice or a miscarriage of justice. *State v. McCleary*, 423 S.W.3d 888, 896 (Mo. App. E.D. 2014). We review for plain error using a two-step analysis. First, we determine whether the record facially establishes substantial grounds to believe plain error occurred, which is error that is evident, obvious, and clear, resulting in manifest injustice or a miscarriage of justice. If so, we may then consider whether the error actually resulted in manifest injustice or a miscarriage of justice. *Id.*

Part of a defendant's right to counsel, as guaranteed by the Sixth and Fourteenth Amendments, is the correlative right to forego counsel and represent him or herself pro se. *Faretta v. California*, 422 U.S. 806, 807 (1975). A trial court does not have the discretion to force an attorney upon a defendant who makes a timely, unequivocal, voluntary, and informed waiver of the right to counsel. *State v. Black*, 223 S.W.3d 149, 153 (Mo. banc

7

2007). However, because a defendant who proceeds pro se forgoes the benefits of counsel, the trial court must determine that the defendant "knowingly and intelligently" relinquished those benefits. *Id.* at 154 (citing *Faretta*, 422 U.S. at 835).

Whether the defendant's waiver of counsel is knowing and voluntary depends on the particular facts and circumstances of each individual case, including the background, experience, and conduct of the accused. *Id.* While there is no rigid procedure or "script" for determining the knowingness and voluntariness of a waiver, in general, before the waiver will be found knowing and voluntary, the trial court should be sure the defendant is mentally competent and that he understands the nature of the proceedings, the possible penalties if convicted, what rights and privileges he is waiving, and the dangers associated with waiving constitutional rights. *Id.* at 155-56.

Here, the record shows the trial court ordered a mental competency examination, which found to a reasonable degree of certainty that Davis did not suffer from a mental disease or defect and that he did not lack the capacity to understand the proceedings. The trial court informed Davis of the charges against him and the potential sentences if he were convicted; it informed Davis of his rights to an attorney, to a trial, to remain silent, and to appeal from the judgment if the jury found him guilty; it informed him of the nature of the trial proceedings, such as the rights of confrontation and cross-examination; and the court warned him about the dangers of proceeding pro se, specifically stating it was a "bad idea." While Davis repeatedly proclaimed he did not understand the charges or proceedings, the record in full showed that Davis acknowledged both the assault first and the ACA charges against him, and that he had been offered a plea deal of 10 years. Moreover, his multitude of filings, while espousing the language of the Sovereign Citizen

8

movement, demonstrated a working knowledge of courtroom procedure, including his motions for bond reduction, to dismiss under the relevant statutes of limitations, to dismiss for lack of jurisdiction, and for change of judge and venue.

Nevertheless, Davis argues the trial had an affirmative duty to also ensure that Davis knew of potential defenses he might offer, citing to *State v. Grant*, 537 S.W.3d 426, 428-29 (Mo. App. S.D. 2018) (reversing where trial court did not inquire about defendant's knowledge of any possible defenses he might pursue or inform him of dangers of proceeding pro se). Davis then argues that because the trial court did not ask him about his knowledge of any potential defenses, it failed to ensure his waiver was knowing and voluntary. We disagree.

In *State v. Hunter*, the Missouri Supreme Court held the defendant's waiver of counsel was knowing and voluntary when the record showed the defendant at all times understood the charges, the range of punishment, and his right to representation. 840 S.W.2d 850, 858 (Mo. banc 1992). In discussing the thoroughness of the record, the court noted the defendant had even been informed of possible defenses. *Id.* Over time, some Missouri courts have interpreted *Hunter* as imposing on a trial court to duty to discuss with the defendant, *inter alia*, potential defenses he can offer. *See, e.g., Grant*, 537 S.W.3d at 428-29; *State v. Schnelle*, 924 S.W.2d 292, 296-97 (Mo. App. W.D. 1996). However, a close reading of *Hunter* does not impose an affirmative duty to discuss potential defenses at the risk of reversal.

Further, this Court has specifically found that the singular failure to advise the defendant of possible defenses to the crime with which he was charged does not, on its own, merit reversal. *State v. Garth*, 352 S.W.3d 644, 653 (Mo. App. E.D. 2011). Where

9

the overall record reveals the defendant understood the charges, the potential sentence, and the dangers and disadvantages of self-representation but remained adamant in his desire to waive counsel and represent himself pro se, we will not reverse merely because the trial court failed to ascertain the defendant's understanding of his defenses. *Id.* at 654. Accordingly, following the case law of this Court, as we must, we find no error, plain or otherwise, in the trial court's singular failure here to discuss with Davis any possible defenses. No manifest injustice occurred.

The second element of Davis's point on appeal is a closer question. Davis argues that the trial court erred in accepting his request to represent himself because it was clear he was not able or willing to abide by the rules of procedures and courtroom protocol. While a defendant has the right to represent him or herself, a defendant's right to self-representation does not trump the trial court's right to maintain order in the courtroom, and this right to self-representation can be limited when the defendant is not willing or able to follow the courtroom rules and protocol. *Faretta*, 422 U.S. at 834 n.46 (citing *Illinois v. Allen*, 397 U.S. 337 (1970) ("[t]he right of self-representation is not a license to abuse the dignity of the courtroom"); *State v. Johnson*, 328 S.W.3d 385, 397 (Mo. App. E.D. 2010) (affirming trial court's decision prohibiting defendant from representing himself based on his obstructionist behavior). Accordingly, the right to self-representation may be denied or terminated if the defendant deliberately engages in serious obstructionist misconduct. *Id.* Likewise, the trial court may appoint a "standby counsel" to aid the defendant, even over the defendant's objections, if the defendant requests help or to be available to represent the accused in the event that termination of the defendant's self-

representation becomes necessary.  *Faretta*, 422 U.S. at 834 n.46; *see also McKaskle v. Wiggins*, 465 U.S. 168, 183-84 (1984).

Here, the record of the pretrial proceedings and Davis's filings espousing his belief in the Sovereign Citizens movement indicated it was likely Davis would engage in obstructionist behavior to disrupt and delay the trial.  Nevertheless, the trial court granted his motion to waive representation and proceed pro se with his own defense, and the trial court did not rescind his right to represent himself even after Davis proved unwilling to follow any rules of procedure or courtroom protocol.  Notably, during the pre-trial hearing where the trial court read the waiver of counsel, Davis had to be physically restrained while shouting profanities at the court.  At the trial itself, Davis refused to participate and left the courtroom, leaving him without any defense at all.

Under these circumstances, the law is clear that the trial court would have been well within its rights to rescind Davis's right to self-representation, or at the very least to appoint standby counsel.  *See Faretta*, 422 U.S. at 834 n.46; *Johnson*, 328 S.W.3d at 397. However, the question here is whether the trial court *was required* to appoint Davis counsel, in light of Davis's obstructionist behavior demonstrating he could not follow courtroom rules or protocol.[1]  This is an issue of first impression for this Court.

Our review of the plain language of *Faretta* and *McKaskle* reveals that while these cases hold a trial court *may* deny the right to self-representation, they do not state the reverse: that a trial court *must* terminate self-representation or appoint stand-by counsel where the defendant engages in obstructionist behavior to disrupt trial.  This Court has

---

[1] While Davis did not properly raise this issue in his brief on appeal, we nonetheless consider it as part of our plain-error review under Rule 30.20 ("[w]hether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom").

11

previously noted that *Faretta* and *McKaskle* are based on respect for a defendant's autonomy and the defendant's right to have actual control over the case he or she presents to the jury. *State v. Sanders*, 482 S.W.3d 492, 497 (Mo. App. E.D. 2016). A defendant's right to control his or her own defense necessarily includes that the defendant has the right to choose not to participate in the trial at all. While a defendant has a panoply of personal rights guaranteed by the Sixth and Fourteenth Amendments, such as the right to counsel and the right to confrontation, the defendant is entitled to waive these personal fundamental rights so long as the waiver is knowing and voluntary. *See State v. Drope*, 462 S.W.2d 677, 681 (Mo. 1971) (defendant can waive right to be present during felony trial); *State v. Loggins*, 647 S.W.3d 551, 556 (Mo. App. W.D. 1982) (personal constitutional rights can be waived); *see also U.S. v. Oliver*, 525 F.2d 731, 734-35 (8th Cir. 1975).

The question becomes whether Davis's waiver of his Sixth and Fourteenth Amendment rights was knowing and voluntary. The record here shows Davis appeared on the morning of trial and continued to challenge the authority of the trial court over him and declared that he would not allow the trial to proceed. The following exchange then occurred:

> THE COURT: Mr. Davis, we are ready to proceed with the jury trial of this matter.
>
> THE DEFENDANT: There's no way.
>
> THE COURT: In a few minutes – in 15 minutes I'm going to have the venire brought in and we're going to begin asking questions of them to select a jury in this case. If you interrupt me during this trial or if you're in any way disruptive, I will have you removed from the courtroom. Do you understand?

12

THE DEFENDANT: You might as well have me removed and taken back where I came from because I'm not going to allow this to go on.

And the only reason I appeared here today is because they told me that you told them personally that I had to appear or it was going to go on without me.

THE COURT: That's true and that's what's about to happen right now if you leave the courtroom.

THE DEFENDANT: Well, that's going to have to happen because I'm not – I'm objecting to this whole process and I'm not going through with any trial under these conflict of interests for the record.

THE COURT: All right. Do you choose to remove yourself from the trial then?

THE DEFENDANT: I choose to leave –actually, yeah, I choose to leave to save the court some time.

THE COURT: Okay. Let's make sure that the hallway is cleared of any jurors and Mr. Davis can return to the jail.

If you change your mind during the day and you choose to participate in the trial, you can return.

This record shows that the trial court warned Davis that if he left, the trial would proceed in his absence, and the trial court informed him that he was free to return to the courtroom at any time during the day to participate in the trial. This was sufficient to show that Davis's waiver of his right to participate in the trial was knowing and voluntary. It is clear that Davis sought to delay the trial by refusing to participate, but the governmental right to proceed with a trial may not be defeated by the defendant's conduct preventing the trial from going forward. *See Johnson*, 328 S.W.3d at 395; *see also Allen*, 397 U.S. at 348-49. Where a defendant has been fully and fairly warned of the consequences of his behavior, courts are not required to allow a defendant to benefit from his own disruptive activities. *Allen*, 397 U.S. at 350.

Considering this Court's respect for a defendant's right to represent himself and to conduct his defense in the manner he chooses, we conclude that *requiring* the trial court to appoint counsel for a pro se defendant who knowingly and voluntarily absents himself from the courtroom is contrary to the defendant's Sixth and Fourteenth Amendment rights, which include his right to protest the trial court's jurisdiction by refusing to participate in the trial. Although Davis had the right to absent himself from his trial, he may not now use his choices to claim a Sixth Amendment violation. This is similar to the established rule that "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Wilkins v. State*, 308 S.W.3d 778, 783 (Mo. App. S.D. 2010). Davis's voluntary actions were the cause of the harm he now claims, and we will not allow him to secure a new trial by his refusal to participate in the last.

We recognize, however, that while Davis had the right to represent himself pro se and had the right to waive his right to participate in the trial, courts have an independent interest in ensuring that criminal trials both are and appear fair. *See Wheat v. United States*, 486 U.S. 153, 160 (1983). Certainly, an empty defense table inherently raises concerns about the fairness of the trial, as was expressed by several venirepersons at Davis's trial here. Nevertheless, the trial court addressed those concerns by stating that Davis had chosen not to be present at trial, which was his right, and that the jury should not infer his guilt from his absence. We presume that the jury follows the instructions of the trial court. *State v. Holmsley*, 554 S.W.3d 406, 412 (Mo. banc 2018). The State likewise stated that Davis would be allowed to return and participate if he wished to, and that the goal of the court and State was to conduct a fair trial with a fair jury. Under our

14

plain-error review of this unpreserved allegation of error, we do not see that manifest injustice occurred under these facts.

While the question of whether a trial court must appoint counsel for a pro se defendant who chooses to waive his Sixth and Fourteenth Amendment rights to trial is an issue of first impression in Missouri, this exact issue has arisen in other jurisdictions, and we find those cases largely corroborate our approach here. A defendant is entitled to waive both his right to counsel and his right to be present during trial, and when he voluntarily and knowingly exercises these rights, the trial court is not *obligated* under the Sixth and Fourteenth Amendments to appoint counsel. *See*, *e.g.*, *State v. Eddy*, 68 A.3d 1089, 1105 (R.I. 2013) ("when a pro se defendant absents himself from his trial of his own volition, courts are almost uniform in holding that a trial judge is not constitutionally required to appoint counsel to represent the absent defendant"); *see also People v. Espinoza*, 373 P.3d 456, 464-68 (Cal. 2016) (finding trial court was not *required* to revoke defendant's right of self-representation when he voluntarily left the courtroom during trial because "the core of the *Faretta* right is that 'the pro se defendant is entitled to preserve actual control over the case he chooses to present to the jury' … [and this] right of control includes 'the option of conducting his defense by nonparticipation'") (emphasis in original). Where a pro se defendant chooses to present a defense "consisting of nothing more than a protest against the court's legitimacy and a refusal to attend trial, … [he] has no Sixth Amendment right to be protected from the prejudice that may result." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008).

Accordingly, we find no plain error in either the trial court's grant of Davis's request to represent himself pro se or in its failure to rescind Davis's right of self-

15

representation and to appoint him counsel when he demonstrated he was not able and willing to abide by the rules of procedures and courtroom protocol.  No manifest injustice occurred.

Point denied.

<u>Conclusion</u>

The sentence and judgment of the trial court is affirmed.